# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-CA-00122-SCT

*RICHARD F. SCRUGGS AND SLF, INC.*

*v.*

*DEREK A. WYATT*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/16/2010 |
| TRIAL JUDGE: | HON. EDWARD C. PRISOCK |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | J. CAL MAYO, JR. |
| | PAUL BOWIE WATKINS, JR. |
| | POPE SHANNON MALLETTE |
| ATTORNEYS FOR APPELLEE: | MICHAEL D. SIMMONS |
| | DONNA MARIE MEEHAN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 03/31/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     In December 2006, Derek A. Wyatt entered into an unwritten employment agreement with Nutt & McAlister, PLLC. Nutt & McAlister was a member of the Katrina Joint Venture (which also included the Scruggs Law Firm, PA[1]), a joint venture governed by the "In Re: Katrina Joint Venture Agreement" ("Katrina JVA") and created to bring lawsuits on behalf of those "denied insurance coverage for property damage arising out of Hurricane Katrina." The Katrina JVA included an arbitration provision, which stated that "[a]ny dispute arising

---

[1]Now, SLF, Inc. Wyatt's First Amended Complaint provided that SLF, Inc., "formerly . . . Scruggs Law Firm, P.A.[,]" is "owned 100% by [Richard F. Scruggs]."

under or relating to the terms of this agreement shall be resolved by ***mandatory binding arbitration*** . . . ." (Emphasis in original.)

¶2.    In April 2008, all Katrina Joint Venture attorneys and associates were disqualified from Mississippi federal court cases against State Farm Insurance Company in which they were involved, based upon payments to material witnesses in hurricane-damage claims which were likely to become the subject of litigation.  Following that disqualification, Nutt & McAlister, despite Wyatt's protest, withdrew from the Katrina Joint Venture and relinquished its interest in all cases related thereto.  Concurrently, Wyatt was engaged in a fee dispute with Nutt & McAlister regarding his claim to a ten-percent interest in Nutt & McAlister's share of Katrina Joint Venture fees.[2]

¶3.    Wyatt's First Amended Complaint ("Complaint") was filed in the Circuit Court of Lafayette County, Mississippi, in June 2009, against Scruggs and SLF, Inc. ("Scruggs Defendants"), *et al*.[3]  In the Complaint, Wyatt asserted that he is a "fee sharing participant" and a "fee sharing attorney" in the Katrina Joint Venture; that he has a "fee-sharing interest in the Katrina Joint Venture"; and that the defendants have a "fee sharing relationship" with him.  Wyatt further maintained that his employment with Nutt & McAlister was within the scope of the Katrina Joint Venture's business such that, as co-venturers, the Scruggs

---

[2]Subsequent pleadings reflect that "the dispute regarding the terms of the unwritten employment contract between Wyatt and Nutt & McAlister is . . . the subject of Nutt & McAlister's request for declaratory judgment" in a prior suit filed in the Chancery Court of Madison County, Mississippi, on February 19, 2009.

[3]Wyatt had filed his initial Complaint on April 16, 2009.  Circuit Court Judges Henry L. Lackey, Andrew K. Howorth, and Robert W. Elliott then signed an "Order of Recusal." Thereafter, this Court entered an Order appointing Senior Status Judge Edward C. Prisock to "preside and conduct proceedings" in this case.

Defendants were "jointly and severally liable with Nutt & McAlister for its breach of fiduciary duty and breach of its fee-sharing agreement with Wyatt."

¶4. In response, the Scruggs Defendants filed a "Motion to Compel Arbitration and To Stay Pending Completion of Arbitration," asserting that all of Wyatt's claims against them related to "his alleged entitlement to fees collected in the course of the [Katrina Joint] [V]enture." As such, the Scruggs Defendants maintained that such claims were within the "broad" scope of the Katrina JVA's "mandatory binding arbitration" provision. Following hearing, the circuit court found the arbitration provision "broad enough in scope to cover the instant controversy," yet overruled the Scruggs Defendants' "Motion to Compel Arbitration and To Stay Pending Completion of Arbitration." The circuit court reasoned that "there is no agreement between [Wyatt] and the [Scruggs Defendants] to arbitrate since [Wyatt] did not sign the [Katrina JVA] nor was his particular involvement foreseeable as a [third-]party beneficiary." From that ruling, the Scruggs Defendants timely filed their "Notice of Appeal."

**FACTS**

¶5. On November 8, 2005, the Scruggs Law Firm; Barrett Law Office, PA; Nutt & McAlister; John G. Jones of Jones, Funderburg, Sessums & Peterson, PLLC ("Jones Firm"); and Dewitt "Sparky" Lovelace of the Lovelace Law Firm, PA, entered into the Katrina JVA. The Katrina JVA provided that "[t]his agreement constitutes *the sole and only agreement of the members hereto* and supersedes any prior understandings, written or oral agreements between the members of this venture." (Emphasis added.) The Katrina JVA stated that the role of the Scruggs Law Firm was as "[l]ead counsel," while the role of Nutt & McAlister

3

was "[f]unding;[4] client relations." As to the "Division of Attorneys' Fees," the Katrina JVA provided that "[a]ll fees or compensation received by any joint venturer and anyone associated by them shall be timely paid in full without reduction to the joint venture and divided as provided in this agreement." Notably, the Katrina JVA also included an arbitration provision, which stated that "*[a]ny dispute arising under or relating to the terms of this agreement* shall be resolved by ***mandatory binding arbitration*** . . . ." (Emphasis added.)

¶6.     According to Wyatt's Complaint, when the Katrina JVA was signed, he was "employed as a salaried associate at the Barrett Law Office . . . ." Wyatt claimed that "[b]y mid-2006," he was advised by "Barrett's senior partner . . . to . . . devote the majority if not all of his time to the Katrina [Joint] Venture," and that in the fall of 2006, Nutt & McAlister requested that he come to work for their firm. Before beginning that employment on December 15, 2006, Wyatt allegedly entered into an unwritten employment agreement with Nutt & McAlister. According to the Complaint, Wyatt was hired for a "nominal salary of $100,000,"[5] along with "a fee sharing agreement that allocated to [him] a 10% fee sharing interest in Nutt & McAlister's [Katrina Joint] Venture fees . . . ." Conversely, Nutt & McAlister claimed that Wyatt was an "at-will employee" who "was paid an annual salary of $100,000, later increased to $150,000, and a bonus calculated on the basis of 10% of the net

---

[4]The Katrina JVA provided that "[f]or financing the litigation and for all of their professional efforts herein, Nutt and Associates will receive 35% of the net fee."

[5]Wyatt's Brief provides that this "nominal salary" was paid by David Nutt & Associates, P.C.

4

fees that [Nutt & McAlister] received *from cases on which Wyatt provided substantial services to firm clients*." (Emphasis added.)

¶7. On January 23, 2007, the Katrina Joint Venture publicly announced a $106.8 million settlement with State Farm, although Wyatt had been instructed to "stand down" from taking depositions in that litigation as early as January 5, 2007, three weeks after his employment began. Wyatt's Complaint provided that the Katrina Joint Venture's attorneys fees from that settlement "were $26.7 million." According to Wyatt, he was entitled to an estimated $823,770.12 share of that settlement, which was not paid by Nutt & McAlister. Instead, he was given only a $100,000 bonus for his three weeks of service. By contrast, Nutt & McAlister maintained that Wyatt "was clearly and unequivocally informed . . . that he would not receive a bonus in connection with the State Farm . . . settlement[,]" but nonetheless Wyatt was "gratuitously paid" the $100,000 bonus. Wyatt further averred that "additional settlements were [subsequently] made, distributing $75.4 million in policy benefits to homeowners who had retained the [Katrina Joint] Venture[,]" of which he alleged that he was not paid his claimed share. Ultimately, Wyatt maintained that Nutt & McAlister had failed to pay "his 10% share of its Katrina [Joint Venture] fees[,]" in "breach of [his] promised fee share . . . ."[6]

¶8. In March 2007, the Jones Firm filed an amended complaint "assert[ing] claims against the co-venturers, and [Scruggs] and Don Barrett individually . . . ." ***Barrett v. Jones,***

_____

[6]As noted in footnote 2 *supra*, a separate suit was filed by Nutt & McAlister regarding the terms of the unwritten employment agreement in the Chancery Court of Madison County, Mississippi.

*Funderburg, Sessums, Peterson & Lee, LLC*, 27 So. 3d 363, 365-66 (Miss. 2009). The defendants in that action filed a motion to stay the proceedings and compel arbitration pursuant to the Katrina JVA. *See id*. at 366. Thereafter, Scruggs was federally indicted for his involvement in "a conspiracy to attempt to influence [Circuit Court Judge Henry L. Lackey] to grant the motion to compel arbitration by offering to pay Judge Lackey $40,000 in exchange for a favorable order."[7] *Id*. at 366. On March 14, 2008, Scruggs "pleaded guilty to conspiracy to commit bribery of an elected state official . . . ." *Id*. at 367-68.

¶9.    Subsequently, all Katrina Joint Venture attorneys and associates who had worked on any of the Katrina Joint Venture's Mississippi federal court cases against State Farm were disqualified therefrom.[8] According to Wyatt's Complaint:

> [w]ithin days of the disqualification, [David H.] Nutt announced on behalf of Nutt & McAlister that the firm was withdrawing from the Katrina [Joint] Venture, and relinquishing all interest in the [Katrina Joint] Venture's remaining Katrina cases. . . . [O]ver [Wyatt's] voiced objection, Nutt instructed

---

[7]"No members of the other defendant law firms [were] charged in the bribery investigation." *Id*. at 368.

[8]The "Memorandum Opinion on Motion to Disqualify" of the United States District Court for the Southern District of Mississippi, Senior Judge L.T. Senter, Jr., presiding, filed on April 4, 2008, stated that:

> I have determined that disqualification is required because Scruggs, acting in furtherance of the [Katrina Joint Venture], paid the Rigsby sisters a substantial sum of money (a consulting fee of $150,000 per year) despite Scruggs's knowledge that the Rigsby sisters were material witnesses in connection with many hurricane damage claims that were likely to become the subject of litigation. While Scruggs made the arrangements for these payments, the other members of the [Katrina Joint Venture] knew or should have known that the payments were being made, and I am of the opinion that their failure to take timely and reasonable remedial steps or to object to this arrangement amounts to a ratification of Scruggs's actions. . . . [T]he payments to the Rigsby sisters are, in and of themselves, sufficient to warrant disqualification.

his private counsel to transfer 685 remaining Katrina cases plus $629,682.00 in cash and annuities to two former [Katrina Joint] Venture partners, for no monetary consideration.

¶10. On June 18, 2009, Wyatt filed the Complaint at issue, naming the Scruggs Defendants; David H. Nutt, Mary Krichbaum McAlister, Nutt & McAlister, David Nutt, P.A., David Nutt & Associates, PC (collectively, "Nutt Defendants"); and John/Jane Does 1-25 as defendants. The "Introduction" to the Complaint began by stating that "[f]rom 2006-2008, [Wyatt] was employed as an attorney in a litigation joint venture[9] formed by five law firms to file suit for Coastal homeowners against insurance companies refusing to pay Hurricane Katrina claims . . . ." Wyatt's "Claims for Relief"[10] included the following:

(1) *Pattern and Practice Fraud (Fee-Stripping)*

-Defendants used fee-stripping techniques "to defraud Wyatt" of the fees to which he was entitled, "amounting to pattern and practice fraud."

(2) *Negligent and Malicious Breach of Fiduciary Duty*

-"[B]y virtue of *his employment as a litigation attorney in the [Katrina Joint] Venture*, at all relevant times, *Wyatt was a fee sharing participant in the Katrina Joint Venture*."
-[T]he *legal relationship* between Wyatt, Scruggs, Nutt, McAlister, the Scruggs Law Firm and Nutt & McAlister . . . was governed by a *fiduciary duty* of absolute honesty, loyalty, full disclosure and the covenant of good faith and fair dealing."

(4) *Negligent and Intentional Misrepresentation*

---

[9]In reference to the joint venture, the Complaint included footnote 1, which stated "[s]ee attached Exhibit 1, agreement entitled *In Re: Katrina Litigation Joint Venture*." Therefore, Exhibit 1 to Wyatt's Complaint was the Katrina JVA.

[10]These claims are taken verbatim from Wyatt's Complaint, as noted.

7

-"Defendants had a *non-delegable fiduciary duty* to [Wyatt], which included . . . the duty to refrain from negligently or intentionally misrepresenting material facts to [Wyatt] in connection with the matters alleged."

(5) *Breach of Contract and Tortious Breach of Contract (Covenants of Good Faith and Fair Dealing)*

-"Defendants *breached* the covenants of good faith and fair dealing *implied by law under the agreement entitled In Re: Katrina Litigation Joint Venture and in their fee sharing relationship with [Wyatt]*."

(7) *Civil Conspiracy*

-"[T]he objective of the conspiracy was to illicitly profit from the fruits of the [Katrina Joint] Venture, and once having done so, collapse the [Katrina Joint] Venture in an effort to avoid personal liability to fee sharing partners and/or third parties."

(9) *Conversion - Misappropriation*

-"[W]hile acting in a *fiduciary capacity the Defendants* assumed dominion and control of funds and property rightfully belonging to [Wyatt], depriving [Wyatt] of lawful possession."

(10) *Unjust Enrichment*

-"[A]t all relevant times [Wyatt] performed valuable services in connection with the Katrina Joint Venture. . . . [S]uch services were performed for the benefit of the Katrina Joint Venture, its members and associates, and did in fact greatly benefit the Defendants."
-Defendants were unjustly enriched by "possession of funds, money or property *derived from [Wyatt's] work in the Katrina Joint Venture . . . .*"

(11) *Accounting*

-"Wyatt is entitled to examination of the books and records of the [Katrina Joint] Venture . . . along with an accounting of and from all the Defendants for money, profits, property, business advantages and opportunities, choses in action, and assets and

8

rights belonging legally and equitably to the [Katrina Joint] Venture *and its joint fee sharing participants. . . .* Wyatt is entitled to restitution of all such . . . ."

(12) *Forfeiture of Ill-Gotten Gains and Profits*

-"[T]he Defendants' exploitative and ill-gotten *gains from the [Katrina Joint] Venture*, to the detriment of *fee-sharing attorneys such as [Wyatt]*, should be forfeited or alternatively, placed *under a constructive trust*."

(13) *Imposition of Constructive Trust*

-"*[Wyatt's] services to the [Katrina Joint] Venture were induced through an agreement between persons and entities in a fiduciary relationship, to the effect that jointly shared fees recovered in the [Katrina Joint] Venture would be held in trust for those having shared fee interests. [Wyatt] justifiably relied on this confidential or fiduciary relationship and Defendants breached their fiduciary duty to live up to their end of the agreement*."

(14) *Waiver and Equitable Estoppel*

-"Wyatt believed and relied upon the multiple representations of the Defendants that his *shared fees in the Katrina Joint Venture* would be fully paid, and upon such reliance, performed all things necessary and reasonable for the mutual profit and success of the [Katrina] Joint Venture." This belief "ultimately result[ed] in the loss or destruction of his *fee-sharing interest in the Katrina Joint Venture . . . .*"

(Emphasis added.)

¶11.    On August 28, 2009, the Scruggs Defendants filed a "Motion to Compel Arbitration and To Stay Pending Completion of Arbitration." While the Scruggs Defendants denied that they owed any duty to Wyatt or were liable to Wyatt "under any of his theories of recovery[,]" they maintained that all of Wyatt's claims against them "relate to his alleged

9

entitlement to fees collected in the course of the [Katrina Joint] [V]enture. His claims necessarily fall within the scope of the [Katrina JVA's] 'broad' arbitration provision."

¶12.    On September 15, 2009, in response to the Nutt Defendants' "Motion to Transfer Venue or To Stay and For Other Relief," Wyatt maintained that:

> the [Scruggs Law Firm] and [Nutt & McAlister] were agents of the Katrina Joint Venture for the purpose of its business, and as such were bound by the acts of each member of the [Katrina Joint] Venture, unless the acting member in fact had no authority to act for the partnership in the particular matter, and the person with whom they were dealing had knowledge of the fact that they had no such authority.

As such, Wyatt argued his employment with Nutt & McAlister was within the scope of the Katrina Joint Venture's business, and that Nutt & McAlister's:

> wrongful act or omission in failing to fully pay Wyatt['s] ten percent fee sharing interest in [Katrina Joint Venture] cases, and confiscating for itself monies owed to Wyatt from Katrina Joint Venture funds in its custody, *whether known or unknown by the Scruggs Defendants, is imputed to the Katrina Joint Venture itself, and the [Scruggs Law Firm], as a partner and agent in the joint venture and single purpose partnership.*

(Emphasis added.) In sum, Wyatt contended that "Scruggs is jointly and severally liable with Nutt & McAlister for its breaches of fiduciary duties owed to Wyatt."

¶13.    Following hearing, the circuit court overruled the Scruggs Defendants' "Motion to Compel Arbitration and To Stay Pending Completion of Arbitration." First, the circuit court noted that Wyatt was "not a signatory party under the Katrina JVA . . . ." The circuit court further determined that Wyatt was not a third-party beneficiary to the Katrina JVA. The circuit court then found that "[t]he dispute sought to be arbitrated is not within the scope of the arbitration clause." According to the circuit court, "[e]ven though *the clause is broad enough in scope to cover the instant controversy*, there is no agreement between [Wyatt] and

10

the [Scruggs Defendants] to arbitrate since [Wyatt] did not sign the [Katrina JVA] nor was his particular involvement foreseeable as a [third-]party beneficiary." (Emphasis added.) Finally, the circuit court stated that "*Scruggs should be estopped to enforce the arbitration clause because of his criminal conduct*[,]" but added that "[s]ince [Wyatt] is not a party or [third-]party beneficiary, a discussion of the applicability of estoppel is unnecessary." (Emphasis added.)

¶14.   Thereafter, the Scruggs Defendants filed a "Motion for Stay Pending Appeal," which was granted upon agreement of the parties, and then a timely "Notice of Appeal" from the denial of their "Motion to Compel Arbitration and To Stay Pending Completion of Arbitration." *See* **Sawyers v. Herrin-Gear Chevrolet Co., Inc.**, 26 So. 3d 1026, 1034 (Miss. 2010) (citing Miss. R. App. P. 3, 4) ("any final decision with respect to arbitration is appealable to this Court pursuant to Mississippi Rules of Appellate Procedure 3 and 4.").

## ISSUE

¶15.   This Court will consider:

> Whether the circuit court erred in denying the Scruggs Defendants' "Motion to Compel Arbitration and To Stay Pending Completion of Arbitration."

## ANALYSIS

¶16.   "This Court reviews the grant or denial of a motion to compel arbitration de novo." **Sawyers**, 26 So. 3d at 1034 (citing **East Ford, Inc. v. Taylor**, 826 So. 2d 709, 713 (Miss. 2002)). In that analysis, this Court's:

> sole function is to determine whether the claim is referable to arbitration. Once that determination is made, the [C]ourt may not delve further into the dispute. "The courts . . . have no business weighing the merits of a particular

11

claim, or determining whether there is particular language in the written instrument which will support the claim."

***Terminix Int'l, Inc. v. Rice***, 904 So. 2d 1051, 1054-55 (Miss. 2004) (quoting ***Russell v. Performance Toyota, Inc.***, 826 So. 2d 719, 722 (Miss. 2002)). In:

> determining whether a particular claim falls within the scope of the arbitration agreement[, courts] "focus on factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying those claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them."

***Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A.***, 372 F.3d 339, 344 (5th Cir. 2004) (quoting ***Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l***, 198 F.3d 88, 99 (2nd Cir. 1999)).

¶17. Under the Federal Arbitration Act, this Court conducts a two-prong arbitration inquiry, "first, whether the parties intended to arbitrate the dispute, and second, if they did intend to arbitrate, 'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" ***Qualcomm Inc. v. Am. Wireless License Group***, 980 So. 2d 261, 268 (Miss. 2007) (quoting ***East Ford***, 826 So. 2d at 713). "The first prong is two-fold in that the court considers whether there is a valid arbitration agreement and then whether the parties' dispute is within the scope of the arbitration agreement." ***Greater Canton Ford Mercury, Inc. v. Ables***, 948 So. 2d 417, 421 (Miss. 2007) (citing ***East Ford***, 826 So. 2d at 713). Under the second prong, "[t]he FAA mandates that arbitration agreements shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." ***Ables***, 948 So. 2d at 423 (quoting ***Terminix***, 904 So. 2d at 1055).

12

*(1)(A) Whether there is a valid arbitration agreement.*

¶18.     Wyatt does not challenge the validity of the arbitration provision itself, but instead contends that there was no agreement to arbitrate between himself and the Scruggs Defendants.  Furthermore, in ***Jones, Funderburg***, this Court determined that, apart from sanctions, this exact arbitration provision was valid and enforceable.  *See **Jones, Funderburg***, 27 So. 3d at 376-77.  Accordingly, this Court concludes that this subprong is satisfied.

*(1)(B) Whether the parties' dispute is within the scope of the arbitration agreement.*

¶19.     Under this subprong, "two questions must be answered: (1) whether the proper forum for determining the scope of the arbitration agreement is in court or in arbitration,[11] and (2) *whether the arbitration agreement encompasses the dispute*."  **Ables**, 948 So. 2d at 421-22 (citations omitted) (emphasis added).

¶20.     Wyatt was not a signatory party to the Katrina JVA, although he claims that he was a "fee sharing participant" thereto.  Since arbitration provisions are "contractual in nature, the general rule is that 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  **Qualcomm**, 980 So. 2d at 269 (quoting ***Adams v. Greenpoint Credit, LLC***, 943 So. 2d 703, 708 (Miss. 2006)).  *See also **Bridas S.A.P.I.C. v. Gov't of Turkmenistan***, 345 F.3d 347, 354 n.3 (5th Cir. 2003) (quoting ***Westmoreland v. Sadoux***, 299 F.3d 462, 465 (5th Cir. 2002)) (arbitration agreements apply to nonsignatories only "in rare circumstances.").  However, "a non-signatory party may be bound to an

---

[11]This question is not at issue in this case, as neither party disputes that the proper forum for determining the scope of the arbitration provision is in court.

13

arbitration agreement if so dictated by the ordinary principles of contract and agency." ***Miss. Care Ctr. of Greenville, LLC v. Hinyub***, 975 So. 2d 211, 216 (Miss. 2008) (quoting ***Washington Mut. Fin. Group, LLC v. Bailey***, 364 F.3d 260, 266 (5th Cir. 2004)). For example, "a signatory may enforce an arbitration agreement against a non-signatory if the non-signatory is a third-party beneficiary or if the doctrine of . . . estoppel applies." ***Qualcomm***, 980 So. 2d at 269 (citing ***Adams***, 943 So. 2d at 708). *See also* ***Bridas***, 345 F.3d at 356 ("[s]ix theories for binding a non-signatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary."). This Court will address only estoppel, as we find it applicable to Wyatt.

*(i) Direct-benefit estoppel.*

¶21.  "Direct-benefit estoppel involve[s] non-signatories who, during the life of the contract, have *embraced the contract* despite their non-signatory status, but then, during litigation, attempt to repudiate the arbitration clause in the contract." ***Noble Drilling Servs., Inc. v. Certex USA, Inc.***, 620 F.3d 469, 473 (5th Cir. 2010) (quoting ***Hellenic Inv. Fund, Inc. v. Det Norske Veritas***, 464 F.3d 514, 517-18 (5th Cir. 2006)) (emphasis added). *See also* ***Simmons Hous., Inc. v. Shelton***, 36 So. 3d 1283, 1287-88 (Miss. 2010) ("estoppel prevents a party from embracing the benefits of a contract while simultaneously trying to avoid its burdens . . . ."); ***Bailey***, 364 F.3d at 268 (quoting ***Grigson v. Creative Artists Agency, LLC***, 210 F.3d 524, 528 (5th Cir. 2000)) (thus, "estoppel prevents a party from 'having it both ways.'"). According to ***Noble Drilling***, "[a] non-signatory can *'embrace' a contract containing an arbitration clause in two ways*: (1) by knowingly seeking and

14

obtaining 'direct benefits' from that contract;[12] or (2) by seeking to enforce the terms of that contract *or asserting claims that must be determined by reference to that contract*." **Noble Drilling**, 620 F.3d at 473 (citing **Hellenic**, 464 F.3d at 517-20) (emphasis added).

¶22.   The Scruggs Defendants contend that the circuit court failed to address the issue of direct-benefit estoppel and assert that "[e]stoppel principles . . . prohibit Wyatt from avoiding arbitration while seeking benefits under the [Katrina JVA]."  According to the Scruggs Defendants, "virtually every claim stated by Wyatt references and relies upon the existence of the [Katrina JVA] and rights and duties allegedly arising from that agreement."  For example, the Scruggs Defendants maintain that "[t]he [Katrina JVA] . . . is the sole basis for the existence of th[e] purported fiduciary duties and contractual obligations" alleged in Wyatt's Complaint, such that "Wyatt's claims are impossible to resolve or determine without reference to the legal relationships and obligations created by the" Katrina JVA.

¶23.   By brief, Wyatt responded that his claims against the Scruggs Defendants "are not dependent on the Katrina JVA.  He is not alleging that the Scruggs Defendants breached the [Katrina] JVA, and he is not seeking to enforce the terms of the [Katrina JVA]."  Instead, Wyatt contended that only his unwritten fee-sharing agreement with Nutt & McAlister, which was not made "subject to the arbitration clause in the [Katrina JVA,]" is at issue. According to Wyatt, his claims against the Scruggs Defendants "arise under the Mississippi Uniform Partnership Act ("MUPA") . . . and tort law[,]" in that:

---

[12]This is termed the "'knowingly exploited' theory of direct benefits estoppel." **Noble Drilling**, 620 F.3d at 474.  "To satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause." **Id**. at 473.

(1) the Katrina Joint Venture was a single purpose partnership, subject to the MUPA; (2) members of the Katrina Joint Venture owed each other fiduciary duties; (3) the members of the Katrina Joint Venture could associate attorneys to prosecute the [Katrina Joint] Venture's cases; (4) Nutt & McAlister associated . . . Wyatt; (5) acts of each member of the Katrina Joint Venture are imputed to all other members of the [Katrina Joint] Venture; (6) members of a joint venture are jointly and severally liable for acts of all venture members; and (7) the Scruggs Defendants are jointly and severally liable with Nutt & McAlister for its breaches of fiduciary duties owed to Wyatt.[13]

¶24. Wyatt adds that "[t]o the extent [his] . . . Complaint is read or interpreted as asserting a breach of contract claim against Scruggs, the claim is withdrawn. Wyatt intends to amend his Complaint once the trial court stay is lifted." The Scruggs Defendants respond that "[t]his Court should give no weight to this . . . promise, particularly in light of the fact that Wyatt provides no details about how his second amended complaint would remedy the fatal defects on his first two pleadings." This Court will consider all claims as pleaded within Wyatt's Complaint. On that point, this Court further notes the following exchange at oral argument:

| | |
|---|---|
| Justice Randolph: | Are you conceding that as the Complaint is drafted right now that the [Katrina JVA] would apply . . . ? |
| Wyatt's Counsel: | Your Honor, yes. I'm not going to argue against the obvious, that would be foolish. |

In light of the "fee-sharing participant"-type language throughout the Complaint, *see supra* ¶¶ 3, 10, the factual allegations in Wyatt's Complaint clearly "'touch matters' covered by" the Katrina JVA. **Waste Mgmt.**, 372 F.3d at 344 (quoting **Smith/Enron**, 198 F.3d at 99).

---

[13]Wyatt adds elsewhere that "the Scruggs Firm is jointly and severally liable with Nutt & McAlister for its breach of fiduciary duty *and* breach of its fee-sharing agreement with Wyatt." (Emphasis added.)

16

¶25.    This Court has stated that:

> [a] joint venture is a single-purpose partnership. ***Duggins v. Guardianship of Washington***, 632 So. 2d 420, 427 (Miss. 1993). As a joint venture, [the Katrina Joint Venture] was governed by Mississippi's partnership law, the Uniform Partnership Act of 1997, effective January 1, 2005.[14] *Under the Act, a joint venture is liable for any penalty incurred as the result of a wrongful act or omission, or other actionable conduct, of a joint venturer acting in the ordinary course of business of the joint venture.* Miss. Code Ann. § 79-13-305 (Rev. 2009). *In the absence of an agreement with the claimant or as otherwise provided by law, all co-venturers are jointly and severally liable for joint-venture obligations.* Miss. Code Ann. § 79-13-306(b). A litigant may sue a joint venture "in the name of the partnership" or he may bring an action against "any or all of the partners in the same action or in separate actions." Miss. Code Ann. § 79-13-307(a), § 79-13-307(b) (Rev. 2009). However, a judgment against a partnership may not be satisfied from a partner's assets unless there is also a judgment against the individual partner. Miss. Code Ann. § 79-13-307(c) (Rev. 2009).

***Jones, Funderburg***, 27 So. 3d at 372-73 (emphasis added). *See also* Miss. Code Ann. § 79-13-302(1) (Rev. 2009) ("[a]n act of a partner . . . for apparently carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership, unless the partner had no authority to act for the partnership in the particular matter and the person with whom the partner was dealing knew or had received a notification that the partner lacked authority."); Miss. Code Ann. § 79-13-305 (Rev. 2009) (a partnership is liable for "loss or injury caused to a person, or for a penalty incurred, as a result of a wrongful act or omission, or other actionable conduct, of a partner acting in the ordinary course of business of the partnership or with authority of the partnership."); ***Idom v. Weeks***

---

[14]"Before January 1, 2007, the Uniform Partnership Act of 1997 applied to all partnerships formed after January 1, 2005; after January 1, 2007, the revised Act applies to all partnerships. Miss. Code Ann. § 79-13-1205 (Rev. 2009). Therefore, the revised Act applies to [the Katrina Joint Venture]." ***Jones, Funderburg***, 27 So. 3d at 373 n.5.

17

*& Russell*, 135 Miss. 65, 76-77, 99 So. 761, 763 (1924) (citations omitted) ("[i]f a tort be committed by one partner while engaged in a transaction within the scope of the partnership business, and such tort be committed in furtherance of the interests of the partnership, it will be liable.").

¶26.    The only reference by the circuit court to estoppel was that "Scruggs should be estopped to enforce the arbitration clause because of his criminal conduct" in the *Jones, Funderburg* case.  The circuit court did not address the effect, *vel non*, of direct-benefit estoppel as applied to Wyatt.

¶27.    This Court first addresses the "knowingly exploited" theory of direct-benefit estoppel. Wyatt argues that "he is not seeking to enforce the terms of" the Katrina JVA, but only his unwritten fee-sharing agreement with Nutt & McAlister.  If one assumes the validity of this position, the benefit sought by Wyatt from the Katrina JVA seems more collateral than "direct," insofar as the Scruggs Defendants' duties as joint venturers with Nutt & McAlister are implicated. *Noble Drilling*, 620 F.3d at 473.  However, Wyatt's Complaint also asserted that he is a "fee sharing participant in the Katrina Joint Venture"; a "fee sharing attorney" under the Katrina Joint Venture; that he has a "fee-sharing interest in the Katrina Joint Venture"; and that the defendants have a "fee sharing relationship" with him.  If one assumes the validity of Wyatt's assertions, these claims allege "direct benefits" are due to Wyatt by virtue of the Katrina JVA.  But even if one accepts the argument that the "knowingly exploited" theory of direct-benefit estoppel does not apply to Wyatt, the direct-benefit estoppel inquiry is not complete.

18

¶28.    The foundation of Wyatt's lawsuit is premised upon a dispute with Nutt & McAlister

over his compensation (fee share) directly tied to successful recovery by the Katrina Joint

Venture against its client's insurers.  As such, Wyatt's claims against the Scruggs Defendants

are directly dependent on the Katrina JVA, and require reference thereto.  *See id*.  Counsel

for Wyatt acknowledged as much during the following exchange at oral argument:

| | |
|---|---|
| Presiding Justice Graves[15]: | Does Mr. Wyatt have any claims that are not derivative of his association with [Nutt & McAlister]?  Any claims against [the Scruggs Defendants] that are not derivative of his association with [Nutt & McAlister]? |
| Wyatt's Counsel: | No, Your Honor . |
| Presiding Justice Graves: | So all of his claims grow out of his relationship with [Nutt & McAlister]? |
| Wyatt's Counsel: | That is a correct statement, Your Honor. |
| Presiding Justice Graves: | [Nutt & McAlister] has a relationship with Mr. Scruggs . . . memorialized by way of the [Katrina JVA]? |
| Wyatt's Counsel: | That is correct, Your Honor. |
| Presiding Justice Graves: | And the [Katrina JVA] is what contains this arbitration clause? |
| Wyatt's Counsel: | That's also correct. |
| Presiding Justice Graves: | So having conceded that all of that is involved, tell me how it is that the arbitration clause is inapplicable to this dispute. |

_____

[15]Former Presiding Justice Graves, now sitting as a judge on the Fifth Circuit Court of Appeals.

19

| | |
|---|---|
| Wyatt's Counsel: | The [Katrina JVA] is not the [Katrina] Joint Venture. The [Katrina JVA] memorialized the [Katrina] Joint Venture.[16] |

¶29. The Scruggs Defendants argued before the circuit court that, "[w]ithout the [Katrina JVA]," Wyatt's claims against the Scruggs Defendants "could not exist in any shape, form or fashion[,]" adding that:

> [i]f they're going to argue the provisions of [the Katrina JVA] to support their claims, then the arbitration provision taints those claims as they relate to [the Scruggs Defendants], the breach of fiduciary duty claim and the breach of contract claim. If on the other hand they're going to abandon the agreement and say there is no agreement, then there can be no claim against [the Scruggs Defendants], but they cannot have it both ways . . . .

In short, even if Wyatt claims that the Scruggs Defendants are jointly and severally liable with Nutt & McAlister as joint venturers, the fount of such alleged joint and several liability flows from the Katrina JVA, which was "the sole and only agreement of the members" of the Katrina Joint Venture. *See **Bailey***, 364 F.3d at 267 (a nonsignatory was bound by an arbitration provision because "the factual basis of each of her claims" arose from "her

---

[16]Similarly, before the circuit court, Wyatt maintained that his claims "are not dependent on the Katrina JVA, and he is not seeking to enforce the terms of the [Katrina JVA]. The Katrina [J]oint [V]enture could have existed without the written Katrina JVA." This Court agrees that the Katrina Joint Venture "could have existed" without the Katrina JVA, as no "formal agreement" is necessary to form a joint venture. ***Sample v. Romine***, 193 Miss. 706, 8 So. 2d 257, 261 (1942) (in a joint venture, "[a] contract between the parties is necessary, but it need not be express or embodied in a formal agreement. It may be inferred from the facts, the conduct of the parties and the circumstances."). However, in this case, the written Katrina JVA was formalized as "the sole and only agreement of the members hereto . . . ." As such, the Katrina Joint Venture was governed by the Katrina JVA. *See* Miss. Code Ann. § 79-13-103(a) (Rev. 2009) ("[e]xcept as otherwise provided in subsection (b), *relations among the partners and between the partners and the partnership are governed by the partnership agreement*. To the extent the partnership agreement does not otherwise provide, this chapter governs . . . .") (emphasis added).

20

husband's loan and credit insurance transactions[,]" to which the arbitration provision applied). As Wyatt's claims against the Scruggs Defendants are "determined by reference to" the Katrina JVA, this Court concludes that direct-benefit estoppel theory requires the nonsignatory claimant, Wyatt, to arbitrate his claims against the Scruggs Defendants. **Noble Drilling**, 620 F.3d at 473.

*(ii) Enforcement of the arbitration provision by Scruggs, individually.*

¶30.    Alternatively, Wyatt contends that "Scruggs, individually, has no standing to compel arbitration" because he was not individually identified as a party to the Katrina JVA and "did not even sign the Katrina JVA on behalf of The Scruggs Law Firm."[17] Therefore, Wyatt maintains that, even if his claims against SLF, Inc. must be arbitrated, "no available legal authority supports compelling Wyatt to arbitrate his claims against Scruggs individually." The Scruggs Defendants respond that Scruggs is not precluded from enforcing the arbitration provision because "Wyatt relies on the [Katrina JVA] in making his claims against [Scruggs]."

¶31.    In both **Bailey** and **Blinco v. Green Tree Servicing, LLC**, 400 F.3d 1308 (11th Cir. 2005), nonsignatories permitted to compel arbitration against other nonsignatories were "operating under a *broad* arbitration clause." **Amstar Mortgage Corp. v. Indian Gold, LLC**,

---

[17]Wyatt makes a similar argument regarding SLF, Inc., contending that "[t]he Scruggs Law Firm was a party to the Katrina JVA, not SLF, Inc. . . . ." But this argument was not presented to the circuit court and is, therefore, waived. *See* **Regan v. S. Cent. Reg'l Med. Ctr.**, 47 So. 3d 651, 654 (Miss. 2010) (quoting **Goode v. Vill. of Woodgreen Homeowners Assoc.**, 662 So. 2d 1064, 1076 (Miss. 1995)) ("[t]his Court has stated previously that it 'need not address issues raised for the first time on appeal.'"). Additionally, this Court reiterates that Wyatt's Complaint provided that SLF, Inc., "formerly . . . Scruggs Law Firm, P.A.[,]" is "owned 100% by [Scruggs]."

517 F. Supp. 2d 889, 899-900 (S.D. Miss. 2007) (citing *Blinco*, 400 F.3d at 1311-12; *Bailey*, 364 F.3d at 267-68) (emphasis added). In the present case, the arbitration provision in the Katrina JVA is broad, applying to "*[a]ny dispute* arising under or *relating to* the terms of this agreement . . . ." (Emphasis added.) *See Miss. Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 176 (Miss. 2006) ("[b]road arbitration language governs disputes 'related to' or 'connected with' a contract . . . ."). Furthermore, as discussed under Section (1)(B)(i) *supra*, Wyatt's claims against Scruggs necessarily require "reference to" the Katrina JVA. *Noble Drilling*, 620 F.3d at 473. Finally, in light of the fact that even Wyatt's Complaint provided that SLF, Inc., is "owned 100% by [Scruggs]," this argument is rather dubious. For these collective reasons, this Court concludes that Scruggs, individually, may enforce the arbitration provision.

*(iii) Scope of the arbitration agreement.*

¶32. As discussed previously, the arbitration provision at issue plainly uses broad language (i.e., "[a]ny dispute arising under or relating to the terms of this agreement shall be resolved by *mandatory binding arbitration*"). *See Horton*, 926 So. 2d at 176. The circuit court acknowledged that "the clause is broad enough to cover the instant controversy . . . ." Finally, the factual allegations in Wyatt's Complaint clearly "'touch matters' covered by" the Katrina JVA. *Waste Mgmt.*, 372 F.3d at 344 (quoting *Smith/Enron*, 198 F.3d at 99). Therefore, this Court concludes that Wyatt's claims against the Scruggs Defendants are within the scope of the Katrina JVA's arbitration provision.

22

*(2) Whether legal constraints external to the parties' agreement will foreclose arbitration of the claims.*

¶33.   Wyatt argues that because the Scruggs Defendants "are seeking to enforce an arbitration clause that Scruggs previously entered into a criminal conspiracy to enforce in the [*Jones, Funderburg*] lawsuit[,]" then they "should be estopped from invoking" that same arbitration provision in this case.  The Scruggs Defendants respond that Wyatt did not present an "unclean hands" argument in the circuit court and, furthermore, that "for the unclean hands doctrine to bar recovery, the party seeking relief must be 'guilty of willful misconduct in the transaction at issue.'"  *See Bailey v. Bailey*, 724 So. 2d 335, 337 (Miss. 1998).  According to the Scruggs Defendants, Wyatt essentially is arguing "that this Court should further sanction [the Scruggs Defendants] due to misconduct for which they have already been sanctioned."  As Wyatt presented an argument akin to "unclean hands" in the circuit court, we will address this issue.

¶34.   This Court has stated that "[t]he clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct *in the transaction at issue*."  *Id*. (citing *Calcote v. Calcote*, 583 So. 2d 197, 199-200 (Miss. 1991)) (emphasis added).  In *Community Bank of Mississippi v. Stuckey*, _ So. 3d _, 2010 WL 4983102 (Miss. Dec. 9, 2010), this Court applied that doctrine against Community Bank in concluding that "we will not compel arbitration based on third-party-beneficiary status or equitable estoppel where the movant has encouraged or engaged in forging the non-movant's signature."  *Id*. at *4.

23

¶35. This Court reiterates that Wyatt's lawsuit is premised upon his dispute with Nutt & McAlister over his fee share under an unwritten employment agreement. There is no allegation that the Scruggs Defendants have engaged in criminal conduct like that for which they were sanctioned in *Jones, Funderburg*. Therefore, the question becomes whether the Scruggs Defendants are now categorically prohibited from enforcing the subject arbitration provision in *all* cases because of Scruggs' criminal conduct related to the *Jones, Funderburg* case. As the clean-hands doctrine focuses upon "willful misconduct in the transaction at issue[,]" this Court finds it inapplicable here. *Bailey*, 724 So. 2d at 337. Therefore, this Court concludes that no external legal constraints should foreclose the arbitration of Wyatt's claims against the Scruggs Defendants.

## CONCLUSION

¶36. Accordingly, this Court reverses the Circuit Court of Lafayette County's denial of the Scruggs Defendants' "Motion to Compel Arbitration and To Stay Pending Completion of Arbitration," and remands with directions to the circuit court to stay the proceedings as against the Scruggs Defendants and refer this matter to arbitration.

¶37. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON, P.J., LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. CARLSON, P.J., KITCHENS AND KING, JJ., NOT PARTICIPATING.**

24