RANDOLPH, Justice,
for the Court.
¶ 1. This consolidated appeal stems from a lawsuit in which Mark Wolgin sued various entities alleging 'wrongdoing surrounding his 2006 purchase of a condominium on the Gulf Coast. In Cause #2010-CA-00653-SCT, Wolgin appeals the Chancery Court of Jackson County’s decision to dismiss two credit reporting agencies (Trans Union LLC and Experian Information Solutions, Inc. (“Experian”)), finding that claims against them were preempted by the Fair Credit Reporting Act (“FCRA”). In Cause # 2010-CA-01177-SCT, the broker for the sale, The Power Broker, Inc. (“Power Broker”), appeals the Chancery Court of Jackson County’s decision to order discovery on the scope of the mandatory arbitration clause in the “Contract for the Sale and Purchase of Real Estate” (“purchase agreement”), instead of fully granting its “Motion to Compel Arbitration.”
¶ 2. Regarding Wolgin’s appeal, we affirm the trial court’s order dismissing the credit reporting agencies, as Wolgin’s claims are preempted by the FCRA. As to Power Broker’s appeal, we reverse the trial court judgment ordering discovery and remand with instructions to stay the proceedings and refer the matter to arbitration.
FACTS AND PROCEDURAL HISTORY
¶ 3. In 2006, Wolgin purchased a condominium in Jackson County, Mississippi, from Ante Bellum, LLC, with plans to rent *1163 the property. Power Broker, owned by Robin Spence, was the broker for the sale. The purchase agreement contained a broad mandatory arbitration clause requiring arbitration for “any controversy, claim, action or inaction arising out of, or relating to, the ‘purchase’ set out herein.”
¶ 4. Following Wolgin’s purchase, the condominium sustained a loss in market value and a decrease in rental income. In November 2009, Wolgin filed a “Complaint for Contract Rescission and Damages” against multiple defendants.[1] The Complaint alleged that factors such as the state of the condominium, the rental market in Jackson County, and how the property would be managed after purchase were misrepresented to induce his purchase. The Complaint also included claims of negligence and invasion of privacy against credit reporting agencies for the inclusion of information regarding the condominium-purchase transaction in Wolgin’s consumer credit reports.
¶ 5. On January 15, 2010, Experian moved to dismiss Wolgin’s credit reporting-related claims, arguing they were preempted by the FCRA. On March 19, 2010, the trial court granted Experian’s motion. On May 19, 2010, Trans Union filed a Motion to Dismiss Plaintiffs Complaint, which joined Experian’s Motion to Dismiss. On June 22, 2010, the court granted Trans Union’s motion. Wolgin timely appealed these dismissals.
¶ 6. On April 9, 2010, Power Broker filed its “Separate Answer and Defenses.” The first defense asserted was a “Motion to Dismiss and Compel Arbitration,” based upon the mandatory arbitration clause in the purchase agreement. The purchase agreement, signed by Wolgin, was attached to the pleading.[2] That same day, Power Broker filed a “Motion to Compel Arbitration and Incorporated Memorandum of Law in Support Thereof,” subsequently joined by Spence.
¶ 7. At the hearing on Power Broker’s “Motion to Compel Arbitration,” Wolgin argued that some claims in the Complaint centered around a property-management agreement, not the purchase agreement. At the close of hearing, the chancellor stated:
I think I am compelled to compel arbitration. The difference here is you all have not done enough.... There has not been enough done to develop what is and what is not in the arbitration because of the word purchase that is used and put in quotes....
... I am going to sustain your motion as to compelling arbitration but I am staying the arbitration. I want you [sic] stay that until you develop what is and what isn’t. The management contract will not be subject to the arbitration, whether it is orally, written, or otherwise. It will not be subject, but the purchase will be. You have to determine which is and which isn’t. I want y’all to develop it.
... You have to be able to tell me what the word purchase applies to.
[[Image here]]
... I am granting the arbitration but I am staying it. You are enjoined from proceeding with arbitration until you conduct some discovery.
*1164 The June 22, 2010, Order of the trial court stated, “the [m]otion for arbitration is granted in part and denied in part. It is granted to the extent that the parties are directed to do discovery on what part of the transaction involves a purchase. The arbitration is stayed, pending for six (6) months, from June 7, 2010.” Pursuant to Tupelo Auto Sales v. Scott, 844 So.2d 1167, 1170 (Miss.2003), Power Broker and Spence timely appealed, arguing that the trial court should have compelled arbitration with respect to Wolgin’s claims against them.
I. Whether the trial court erred in finding that Wolgin was a consumer under the FCRA, such that his negligence and invasion of privacy claims against Trans Union and Experian were preempted.
¶ 8. This Court reviews a motion to dismiss de novo, and will not disturb the findings of the trial court “unless they are manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Estate of Johnson ex rel. Shaw v. Graceland Care Ctr. of Oxford, 41 So.3d 692, 694-95 (Miss.2010). In our review, all allegations in the complaint are taken as true. See id.
¶ 9. This Court has recognized that the FCRA explicitly preempts state law. See Harmon v. Regions Bank, 961 So.2d 693 (Miss.2007); 15 U.S.C. § 1681h(e) (2006)(“no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency” based on information disclosed in a consumer report).
If 10. Wolgin claims that Trans Union and Experian were negligent and invaded his privacy by placing the condominium’s mortgage on his consumer credit report. According to Wolgin, his purchase of the condominium as an investment makes this an “exempted transaction” under the FCRA, such that his claims are not preempted. Wolgin’s argument is centered on the definitions of “consumer transaction” and “exempted transaction” provided in 15 U.S.C. §§ 1602 and 1603. 15 U.S.C. §§ 1602 & 1603 (2006)(exempt-ing transactions made primarily for business, commercial, or agricultural purposes, and defining a “consumer transaction” as one made primarily for personal, family, household, or agricultural purposes). Ex-perian counters that those definitions are inapplicable to the FCRA, that Wolgin is clearly a “consumer” as defined by the FCRA, and, therefore, that his state-law claims are preempted.
¶ 11. Experian is correct that 15 U.S.C. §§ 1602 and 1603 are inapposite. Both explicitly apply to only “this subchap-ter,” i.e., Subchapter I: Consumer Credit Cost Disclosure, a part of the Truth in Lending Act. They do not apply to the FCRA. The relevant portions of the FCRA applicable to this case are found in Sub-chapter III.
¶ 12. The FCRA defines the term “consumer” as “an individual.” 15 U.S.C. § 1681a(c) (2006). By contrast, it defines the term “person” as “any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity.” 15 U.S.C. § 1681a(b) (2006). These statutory definitions reflect that a consumer is a human individual, as opposed to a legally-created entity. Wolgin is clearly an individual, who purchased the condominium in his capacity as an individual. Thus, the mortgage was properly reported on his consumer credit report, regardless of the condominium’s use or purpose. See Zahran v. Transunion Corp., 2003 WL 1733561, at *3 (N.D.Ill. *1165 March 31, 2003)(“business ventures on which the consumer is personally liable are rightfully included on a consumer credit report under the FCRA”).
¶ 13. In support of the argument that his claims are not preempted, Wolgin cites several cases in which credit reporting agencies have argued successfully that a credit report they issued falls outside the scope of the FCRA because it involved business. But these cases have no bearing on whether Wolgin’s claims fall within the purview of the FCRA. In citing these cases, Wolgin confuses the definition of “consumer” with the definition of “consumer report.”[3] Determining whether a report is a “consumer report” within the FCRA, or a “business report” outside of it, centers on the purpose for which the report was collected, not the purpose for entering into the transaction listed on the report. See Boothe v. TRW Credit Data, 523 F.Supp. 631, 634 (S.D.N.Y.1981). Reports collected for business purposes do not fall under the FCRA.[4] But Wolgin’s contentions have nothing to do with the purpose for which a report is collected.
¶ 14. The FCRA does not preempt state law where “false information [is] furnished with malice or willful intent to injure” the consumer. 15 U.S.C. § 1681h(e)(2006). According to Wolgin, he alleged that Experian and Trans Union committed gross negligence in reporting this transaction, because they did so “in disregard of the transaction’s underlying facts.” Thus, he contends that his claims are not preempted. Yet, given that it is clearly acceptable to place Wolgin’s mortgage on his consumer credit report, this argument has no merit. Additionally, Wolgin does not plead malice or willful intent to injure in the Complaint, nor any facts that would tend to support malice. He merely alleges that the transaction has been reported with “deliberate indifference,” which does not suffice to bring his claim within the exception to preemption. See Harmon, 961 So.2d at 699-700 (using the common-law standard for malice, and finding that plaintiffs did not show “the intent, without justification or excuse, to commit a wrongful act” because the defendants did not know of falsity nor publish in reckless disregard of the truth).
¶ 15. Because Wolgin’s claims are clearly preempted by the FCRA, the trial court’s dismissal of his Complaint as to Trans Union and Experian is affirmed.
II. Whether the trial court erred in “denying in part” Power Broker’s “Motion to Compel Arbitration.”
¶ 16. In Tupelo Auto Sales, this Court declared that “an appeal may be taken from an order denying a motion to compel arbitration.” Tupelo Auto Sales, 844 So.2d at 1170. In Sawyers v. Herrin- *1166 Gear Chevrolet Company, 26 So.3d 1026 (Miss.2010), this Court stated:
[w]e thus wish to establish via today’s case but one procedure for this Court’s review of a trial court’s grant or denial of a motion to compel arbitration, and that one procedure shall be via a direct appeal pursuant to the provisions of Mississippi Rules of Appellate Procedure 3 & 4.
Sawyers, 26 So.3d at 1032 (emphasis added). Accordingly, this Court has jurisdiction to consider the merits of this appeal.[5]
¶ 17. This Court has stated that “any doubts concerning the scope of arbi-trable issues should be resolved in favor of arbitration.... ” East Ford, Inc. v. Taylor, 826 So.2d 709, 713 (Miss.2002) (citations omitted). See also IP Timberlands Operating Co., Ltd. v. Denmiss Corp., 726 So.2d 96, 107 (Miss.1998) (citation omitted)(“unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue, then a stay pending arbitration should be granted.”). In deciding:
whether a particular claim falls within the scope of the arbitration agreement^ courts] “focus on factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying those claims ‘touch matters’ covered by the parties’ ... agreements, then those claims must be arbitrated, whatever the legal labels![6]] attached to them.”
Scruggs v. Wyatt, 60 So.3d 758, 766 (Miss.2011) (citations omitted) (emphasis added). Wolgin’s non-credit report claims related to his decision to purchase the condominium, financing of that purchase, and losses sustained as a result of allegedly being fraudulently induced to enter into the purchase agreement. Specifically, Wolgin’s Complaint provided that if the defendants had not made the misrepresentations and omissions described therein, but instead had “made a candid disclosure to [Wolgin] of those facts and matters alleged [in the Complaint], [Wolgin] would not have made a decision to purchase this condominium unit .... ” (Emphasis added.)
¶ 18. The allegations in Wolgin’s Complaint indisputably touched matters covered by the purchase agreement, for the Complaint alleged that the defendants’ *1167 fraudulent misrepresentations and omissions had induced him to purchase the condominium. Thus, despite Wolgin’s subsequent argument that some of his claims related solely to a separate property-management agreement — which was neither referenced in the Complaint nor included in the record — all of the claims pleaded in his Complaint clearly touched the subject of the purchase agreement, i.e., Wolgin’s condominium purchase.
II19. But even assuming arguendo that some of Wolgin’s claims did not directly relate to his condominium purchase under the purchase agreement, the mandatory arbitration clause expressly provided that “all claims ” between the parties involved in the purchase agreement were to be governed by the Federal Arbitration Act, as follows:
any controversy, claim, action or inaction arising out of, or relating to, the “purchase” set out herein, as against the listing company or selling company and/or their agents or representatives (hereinafter “company”) involved in this transaction, shall be resolved by arbitration ...; and ... the Federal Arbitration Act ... shall govern the interpretation and enforcement of this arbitration agreement along with all claims between or among any parties and the company(ies) involved in this transaction.
(Emphasis added.) Wolgin’s claims that fraudulent misrepresentations and omissions induced him to enter into the purchase agreement were clearly “between or among [the] parties and the company(ies) involved in” the sale and purchase of the condominium.
¶ 20. As the question of whether arbitration should be required is controlled by his Complaint, we conclude that all of Wol-gin’s claims against Power Broker are ar-bitrable. See id. Accordingly, the trial court erred by granting the motion to compel arbitration in part, denying it in part, and ordering the parties to engage in discovery. No authority existed for the trial court to “gran[t] the arbitration but ... sta[y] it.” Furthermore, once arbitration was granted, there is no authority to grant discovery. The scope of arbitration is determined by the arbitrator, not a court which has relinquished the dispute to another forum for disposition. Therefore, we reverse the trial court’s judgment ordering discovery and remand with instructions to stay the proceedings and refer the claims contained in the Complaint to arbitration.
CONCLUSION
¶ 21. In Cause # 2010-CA-00653-SCT, this Court affirms the trial-court orders dismissing Experian and Trans Union, as Wolgin’s claims are clearly preempted by the FCRA. In Cause # 2010-CA-01177-SCT, this Court reverses the trial court’s judgment ordering discovery and remands with instructions to stay the proceedings and refer the claims contained in the Complaint to arbitration.
¶ 22. AS TO 2010-CA-00653-SCT: AFFIRMED. AS TO 2010-CA-01177-SCT: REVERSED AND REMANDED.
WALLER, C.J., CARLSON, P.J., LAMAR AND PIERCE, JJ., CONCUR. KING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS AND CHANDLER, JJ.; WALLER, C.J., JOINS IN PART. DICKINSON, P.J., NOT PARTICIPATING.

. Notably, the Complaint failed to attach any contract.

. The purchase agreement is the only contract that appears in the record. Although Wolgin later argued that he had claims arising under a separate property-management agreement, the Complaint did not mention a property-management agreement, and the record does not include a property-management agreement.

. A "consumer report” is defined as:
any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer’s credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer’s eligibility for credit or insurance to be used primarily for personal, family, or household purposes.
15 U.S.C. § 1681a(d)(l)(A) (2006).

. An example is when a corporate entity applies for a business loan and the bank checks the credit report of the business’s owner to assist in making its determination regarding extending credit to the corporate entity. Because the report is being used for a decision on the credit of a business, rather than credit for personal, family, or household purposes, the report falls outside the scope of the FCRA.

. The separate opinion makes reference to Mississippi Rule of Civil Procedure 54(b) in its sua sponte argument that the June 22, 2010, Order is "interlocutory,” and that in the absence of an interlocutory appeal, this Court lacks jurisdiction. (Sep. Op. at ¶¶ 27, 31). Yet rulings on motions to compel arbitration are not final judgments for Rule 54(b) purposes, as they pertain only to the forum in which claim(s) should proceed, not a partial final judgment based on the underlying claims. This Court has stated that direct appeal remains the sole procedure for this Court's review of the trial court's judgment on the motion to compel arbitration. See Sawyers, 26 So.3d at 1032. Here, the trial court's order granted the motion to compel in part and denied it in part.

. It is unclear whether Wolgin's claims even have any "legal labels” which suggest that they did not arise under or are unrelated to the purchase agreement. While Wolgin now argues he may have "legal causes of action” arising under a property-management agreement, that agreement was neither attached to, nor referenced in, his twenty-nine-page Complaint, and is altogether absent from this record.
Furthermore, this Court would be remiss in failing to note that Wolgin’s "Response to Motion to Compel Arbitration” expressly stated:
prior to undertaking service on [Power Broker], the attorney for [Power Broker] was advised that [Wolgin] did not object to arbitration of the entirety of [Wolgin's] claims alleged in this [cjause on the condition that [Power Broker] pay any arbitration costs that were not assigned to or assumed by [Wolgin] under the terms of the Contract.
(Emphasis added.)