IRVING, P.J.
for the Court:
¶ 1. Bharat B. Patel, New Vision Brandon Plaza LLC, and Jagdish A. Barot (collectively “the Defendants,” unless the context dictates otherwise) appeal a Lee County Circuit Court judgment in favor of BaneorpSouth that denied Patel’s motion to compel arbitration. Finding that the circuit court misapplied the law, we reverse and render the judgment of the circuit court and remand.this case with directions to dismiss BancorpSouth’s lawsuit, and send the case to binding arbitration.
PROCEDURAL HISTORY AND STATEMENT OF THE FACTS
1f 2. In 2009, BaneorpSouth held a deed of trust on a parcel of undeveloped commercial property of approximately thirty-five acres located in Rankin County, Mississippi. In March 2009, the property was facing foreclosure. The Defendants purchased the property before the foreclosure sale, but would later claim that they had been fraudulently induced to purchase it based on á bid amount, set by Bancorp-South, of $5.3 million and that Bancorp-South had failed to disclose that the property contained wetlands that required remediation.
¶ 3. At the time of purchase, New Vision executed a promissory note (the Note) and a deed of trust. By separate, individual agreements (the Guaranties), Barot and Patel guaranteed payment of the Note. The Note and the Guaranties contained similar, but not identical, arbitration provisions. Section 29 of the Note states:
Any and all claims, disputes[,] or controversies ... by either Borrower or Lender ... arising from or relating to (a) this Note ... shall be resolved upon the election of Borrower or Lender or said third parties, by binding arbitration pursuant to this Section 29 and the code of procedure of the entity which is the Arbitration Organization at the time the Claim is filed.
(Emphasis in original). Section 22 of the Guaranties similarly states:
Any claim, displute[,] or controversy ... by either Borrower, Guarantor[,] or Bank ... arising from or relating to (a) any of the Obligations [of the Guaranty] ... SHALL BE resolved upon the election of Guarantor or Bank ... by BINDING ARBITRATION pursuant to *1062 this Arbitration Provision and the Code of Procedure of the Arbitration Organization in effect at the time the Claim is filed and all Claims shall be filed at any Arbitration Organization office.
(Emphasis in original).
¶ 4. On September 5, 2012, Bancorp-South filed suit against the Defendants in the Lee County Circuit Court (the Lee County Action) to collect the unpaid balance of the loan. On September 20, 2012, before -answering the Lee County Action,[1] the Defendants filed a' lawsuit in the Rankin County Circuit Court (Rankin County Action) to rescind and avoid the Note and Guaranties, demanding a jury trial and claiming they were fraudulently induced by BancorpSouth to buy the propérty. The Defendants also claimed that they had defaulted on the loan, with an unpaid balance of $4,926,116.39, because they could not develop the. property due to the fact that it contained wetlands.
¶ 5. On October 24, 2012, BancorpSouth filed a motion to dismiss the Rankin County Action under the first-to-file rule[2] or, alternatively, to transfer the case to Lee County.
¶ 6. On November 19, 2012, New Vision and Barot filed, in the Lee County Action, a joint answer, a compulsory counterclaim, and a motion to dismiss and compel arbitration. The fifth defense in their answer affirmatively asserted their right to arbitration as specified in both the Note and Guaranties. The counterclaim was asserted “without waiving and expressly preserving [New Vision and Barot’s] right to arbitration.” On the same day, Patel separately answered the -Lee County Action. He raised forty-six affirmative defenses in his answer, but did not raise arbitration. However,, in a separately filed motion to dismiss, Patel, by. reference, adopted Barot and New Vision’s motion to dismiss and compel arbitration. He also filed a motion to transfer the case to the Rankin County Circuit Court,
¶7. The Rankin County Circuit Court heard BancorpSouth’s motion to dismiss in April 2013, one week before the hearing in the Lee County Action on New Vision and Barot’s'motion to compel arbitration. On April 29, 2013, the Rankin Cóunty Chancery Court dismissed the Rankin County Action under the'first-to-file rule, and'on August 15, 2014, the Lee County Circuit Court denied New Vision and Barot’s motion to dismiss and compel arbitration, as well as Patel’s motion to dismiss and/or to transfer .the case to Rankin County. The trial court found that the Defendants had waived their contractual right to arbitration by engaging in conduct inconsistent with arbitration (filing the Rankin County Action). The Defendants have timely appealed.
DISCUSSION
¶ 8. On appeal, the grant or denial of a motion to compel arbitration is reviewed de novo. Nutt v. Wyatt, 107 So.3d 989, 993 (¶ 10) (Miss.2013) (quoting Scruggs v. *1063 Wyatt, 60 So.3d 758, 766 (¶ 16) (Miss.2011)). We also note that so far as we can tell, there is no Mississippi precedent addressing the unique facts presented in today’s case — whether a defendant who is obligated to arbitrate a matter waives that ' right by initiating litigation concerning that matter in a separate lawsuit.
¶ 9. The circuit court, in denying the Defendants’ motion to dismiss and compel arbitration in the Lee County Action, found that the Defendants had waived their contractual right to arbitrate by initiating the Rankin County Action. In support, the circuit court cited Century 21 Maselle & Associates v. Smith, 965 So.2d 1031 (Miss.2007). Century 21 promulgated the test that arbitration can be waived by a party through “either active participation or substantial invocation of the litigation process which results in detriment or prejudice to the other party, or engaging in conduct inconsistent with timely enforcing the arbitration agreement....” Id. at 1036 (¶ 8). ' The circuit court applied the second alternative of the test, stating that the Defendants had engaged in “conduct [ (the filing of the Rankin County Action) ] inconsistent” with enforcing the arbitration agreement; thus, arbitration was waived.[3]
¶ 10. “[Pjarties claiming waiver must offer sufficient evidence at a hearing to overcome the presumption in favor of arbitration.”- Id. The parties here agree that Century 21 is binding, and that the second alternative, of the test — “engaging in conduct inconsistent with timely enforcing the arbitration agreement” — is applicable. BaneorpSouth claims this test is applicable to New Vision, Barot, and Patel as plaintiffs in the Rankin County Action. We agree, but they are not seeking to arbitrate matters in that action. And, as we discuss below, what they did as plaintiffs in the Rankin County Action is material to that action, and what the defendants did, or failed to do,, in the Lee County Action is material to that action.
¶ 11. In support of their argument that their filing of the Rankin County Action does not-constitute waiver or preclude arbitration in the Lee County Action, the Defendants point to the Mississippi Supreme Court’s pronouncement in Mississippi Credit Center, Inc. v. Horton, 926 So.2d 167 (Miss.2006):
[Njeither delay in pursuing the right to compel arbitration nor participation in the judicial process, standing alone, will constitute a waiver. That is to say, a party who invokes the right to compel arbitration and pursues that right will not ordinarily waive the right simply because of involvement in the litigation process....
Id. at 180 (¶41). The Defendants argue that their right , to arbitrate was timely asserted approximately two and one-half months after the Lee County Action was filed; thus, according to Horton, waiver of arbitration was precluded. By this argument, it appears that the Defendants tacitly agree that their actions, as plaintiffs, in the Rankin County Action are relevant to the Lee County Action, where they are defendants. If that is what the Defendants -are asserting, we disagree with that part of their argument. However, we agree that the Defendants- timely, asserted their right to arbitrate in the Lee County Action, as the record reveals that they asserted that right in their initial filings.
*1064 ¶ 12. Since none of the parties assert that the actions undertaken by the Defendants in the Lee County -Action to eompel arbitration were untimely, we will not discuss this issue any further. The heart of BancorpSouth’s argument is not the timeliness of the Defendants’ assertion of their right to arbitrate within the Lee County Action, but the Defendants’ filing of the Rankin County Action and its impact on their right to compel arbitration in the Lee County Action.
¶ 13. While we agree that Century 21 is controlling, we find that the circuit court misapplied it. In a lawsuit brought by a plaintiff, the right to compel arbitration of the. issues contained in the plaintiffs lawsuit belongs to the defendant if there exists an arbitration agreement, executed by the plaintiff and defendant, that covers the matters addressed in the lawsuit. Therefore, it seems obvious that by initiating the Rankin County Action, the Defendants, who were plaintiffs in that action, waived their right to arbitrate the matters contained in that lawsuit because thé filing of the action itself is inconsistent with a desire to take advantage of the right to arbitrate. So had the Rankin County Action been initiated first and remained viable, the Defendants, who were plaintiffs there, would not have been able at some point later to change their minds and seek arbitration. By the same token,' it can be legitimately argued that by initiating the Lee County Action, BancorpSouth waived its right to arbitrate the issues contained in that suit, but the same cannot be said about Patel, New Vision, and Barot because they are the defendants in' the Lee County Action.
¶ 14. The Defendants argue that Nutt is dispositive. Nutt involved two suits over the amount of attorney fees owed to Derek Wyatt as a result of work he performed in connection with litigation on behalf of Hurricane Katrina insureds. Nutt, 107 So.3d at 991-92 (¶¶ 3-5). It was not disputed that David H. Nutt and others entered into a contract with Wyatt whereby Nutt and others engaged Wyatt’s services. The dispute was over the nature of the agreement. Wyatt insisted that he was part of the Katrina Joint Venture (KJV) that Scruggs Law Firm Inc., Nutt & McAlister PLLC, and others formed to represent Hurricane Katrina insureds and that he was entitled to a minimum ten percent fee-sharing interest in the KJV cases. Id. On the other hand, Nutt and the others’ position was that they orally agreed to pay Wyatt an annual salary plus a bonus based on ten percent of the net fees that Nutt received from eases on which Wyatt provided substantial services to clients. Id.
¶ 15. The first suit was filed by Nutt in the Chancery Court of Madison County, which the supreme court described as follows:
Nutt, et al., filed a “Verified Petition for Replevin and Complaint for Declaratory Judgment to Adjudicate Amount Owed by Nutt & McAlister, PLLC to Wyatt, or Amount Owed by Wyatt to Nutt & McAlister, PLLC”.... In that action, Nutt, et al., sought a declaration of obligations related to the oral employment contract with Wyatt; their complaint did not refer to the KJV, and they did not aver that-Wyatt was a party to the KJV.
Id. at 991 (¶ 4). The second suit was filed by Wyatt in the Lafayette Circuit Court (Lafayette County Case) against' Scruggs, Nutt, and others. That suit claimed that he had been “denied his share of KJV attorney fees as agreed upon by Nutt and McAlister.” Id. at 991-92 (¶ 5). Nutt and others filed a motion to transfer the Lafayette County Case to Madison County or to stay the proceedings in the Lafayette County Case pending a final judgment in *1065 the Madison County proceedings. The trial court denied the motion. Id. at 992 (¶ 6). Scruggs then filed a motion to compel arbitration in the Lafayette County Casé, “seeking to compel Wyatt to arbitrate his claims against them under the arbitration provision .in the [Katrina Joint Venture Agreement (KJVA)].” Id. at (¶ 7). The circuit court denied the motion but stayed the proceedings pending an appeal by Scruggs. Id. ■
¶ 16. On appeal, the supreme court found that the KJVA arbitration provision was valid and that it applied to Wyatt’s claims against Scruggs under the “direct-benefit rule” even though Wyatt was not a signatory to the KJVA. Id. at (¶8). Therefore, the supreme court reversed and remanded the Lafayette County Case.
¶ 17. Immediately after remand, Nutt “filed a motion to remove the earlier stay granted by the [circuit court] and to compel arbitration of Wyatt’s claim.!’ Id. at 993 (¶ 9). The circuit court denied Nutt’s motion even though it found, based on the supreme court’s, ruling in the Scruggs appeal, that the arbitration provision was also applicable to the Nutt defendants. Id. The circuit court explained that
Nutt [and others] had waived their right to compel arbitration by: (1) filing a motion to transfer venue prior to filing their motion to compel arbitration;- (2) delaying 595 days before filing their motion to compel arbitration; and (3) filing a prior action in Madison County Chancery Court seeking declaratory, judgment regarding Wyatt’s rights under the . oi;al employment contract.
Id. Nutt appealed.
¶ 18. On appeal, although the supreme court discussed Nutt’s prior filing in the Madison County Chancery Court and the nature of that filing being different than the basis asserted by Wyatt in the Lafayette County Case, it is clear from any •objective reading of Nutt that the supreme court’s holding was premised solely on ■Nutt’s action in the Lafayette County Case where he was a defendant, not what he did prior to being made a defendant. Here is what the supreme court said:
In their first responsive pleading, before this [c]ourt’s decision that the Katrina JVA applied to Wyatt’s claims, Nutt, et ah, preserved their right in the alternative to compel arbitration, in the event of a judicial determination that the Katrina JVA applied to Wyatt’s claims. When We declared that the Katrina JVA did apply, they timely filed a motion to compel arbitration, within one week of the mandate. We find that the' conduct of Nutt, et al., was consistent 'with timely seeking to compel arbitration, once this [cjdurt held that Wyatt’s claims were related to'the Katrina JVA. Accordingly, we conclude that Nutt, et al., did not waive their right to enforce the provision.
Id. at 994-95 (¶ 14). At another point in the opinion, the supreme court said this:
We find that Nutt, et al., did not actively participate in litigation or substantially invoke the litigation process in this case before seeking to enforce the provision, nor did they conduct themselves inconsistently with timely enforcing the provisions. ■ The trial court erred by finding . that .Nutt, et al., waived their right to compel arbitration by ■ participating in litigation and delaying filing a motion to •compel arbitration.
Id. at 996 (¶ 19) (emphasis added). It is cléar that the ultimate matter in dispute in both the Madison County Case and the Lafayette County Cáse was attorney fees, if any, owed to Wyatt; although the parties pursued different theories or avenues to get to a determination in that regard. So while our case is not factually on all-fours *1066 with Nutt, we nevertheless believe it is instructive on the law to be applied here.
¶ 19. The dissent apparently concludes that the reason the supreme court held in Nutt that Nutt’s prior filing of the Madison County lawsuit had not waived his right to arbitrate Wyatt’s claim against it in the Lafayette County Case is because the two actions dealt with very different matters — an employment agreement and a joint-venture agreement. That is not an entirely accurate characterization of the lawsuits. There was only one agreement, which was an oral employment agreement. The dispute, was over whether that oral agreement fell within the .parameters of the arbitration provision of the KJVA even though. Wyatt was not a signatory to it. As stated, Nutt, taking the position that the KJVA was inapplicable — though not directly litigating that issue in the Madison County Case — sought instead in the Madison County Case a declaration of' obligations related to the oral employment contract with Wyatt. It. is not reasonably debatable that the Nutt decision declared that one of the obligations related to the oral- employment contract is that -it was subject to- the arbitration provision of the KJVA, which was the subject matter of Lafayette County Case. So it is clear that the two lawsuits were related but employed procedurally different mechanisms to resolve the attorney’s fee dispute between the antagonists in the lawsuits. In any event, there is nothing in Nutt warranting the extrapolation that if the pleadings in Nutt’s Madison County Case had mentioned :the KJVA, the result would have been a finding that he. waived his right to arbitrate Wyatt’s claim in the Lafayette. County Case.
'¶20. We also find the dissent’s and BancorpSouth’s reliance on United States ex rel. Frank A. Trucco & Sons Co. v. Bregman Construction Corp., 256 F.2d 851, 852 (7th Cir.1958), unavailing in light of the Nutt decision. Even so, we will briefly discuss the Trueco decision. There, Bregman Construction (Bregman) initially sued Frank A. Trueco & Sons’ (Trueco) surety in the state of New York for Trucco’s breach , of a public-works subcontract that contained an-arbitration provision. Id. Trueco then sued Bregman in Indiana for breach of the same subcontract, and Bregman tried to invoke the arbitration provision. Id. The district court ruled that Bregman waived its right to arbitrate because of its filing suit in New York. Id. The United States Court of Appeals for the Seventh Circuit stated:
[T]he district court properly determined this matter. To hold otherwise would place Bregman in the unique and untenable" position of demanding the right to litigate one phase of its dispute with Trueco while at the same time insisting upon arbitration of another phase of its dispute, all of such controversy arising out of its sub-contract with the other disputants.
⅜ ⅜ *
We hold, in the instant case, that Breg-man, by filing its New York action, repudiated its own promise to arbitrate as set out in its sub-contract with Trueco. This repudiation gave use-plaintiff the election of arbitration which it did not exercise in the New York action. By filing its complaint under the Miller Act in this court use-plaintiff then made its election not to arbitrate. Thus, each party elected not to arbitrate, the one by filing an action in New York for alleged failures on a performance bond, and the other by bringing suit in Indiana for money alleged due for labor and materials under a payment bond, both actions arising out of the same sub-contract. We hold that Bregman thereby conclu *1067 sively waived its right to arbitration in the instant ease.
Id. at 853-54.
¶ 21. We acknowledge that the facts in Trueco are somewhat comparable to our facts, but point out that they are different in a- significant aspect in that in Trueco, Bregman, the party seeking to compel arbitration, apparently was not precluded from continuing his pursuit of the separate litigation that he had initiated.[4] Here, the Defendants were unable to pursue the Rankin County Action because of the first-to-file rule. That was not the case in Trueco; otherwise Trueco would not have been able to maintain its lawsuit. Further, had Bergman’s separate lawsuit been dismissed at the time of the hearing on its motion in Trueco to compel arbitration, there would have been no reason for the Seventh Circuit’s finding that Bregman was “demanding the right to litigate one phase of its dispute with Trueco while at the same time insisting upon arbitration of another phase of its dispute.” Here, at the time that the Lee County circuit judge denied the Defendants’ motion to compel, more than four months had passed since the Defendants’ Rankin County Action had been dismissed. So. here, unlike Bergman’s position in Trueco, the Defendants’ position was not untenable as they were not attempting to have their dispute with BancorpSouth resolved by both a jury panel and an arbitration panel. The most that they did was seek a transfer of the Lee County Action to Rankin County.
¶ 22. We also agree with Patel’s argument that the Rankin County Action could not constitute a waiver of arbitration because that court lacked subject-matter jurisdiction. Under the priority-jurisdiction rule, jurisdiction was established in Lee County before the Defendants filed their Rankin County Action. Therefore, it seems logical to us that the Rankin County Action had no ability to impact the rights of any party and could not support waiver,
¶ 23. For the reasons discussed, we find that the circuit court erred in refusing to grant the Defendants’ motion to compel. Consequently, we reverse and render the judgment of the circuit court and remand this case for proceedings consistent with this opinion.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY IS REVERSED AND RENDERED, AND THIS CASE IS REMANDED WITH DIRECTIONS TO DISMISS BANCORP-SOUTH’S LAWSUIT AND SEND THIS CASE TO BINDING ARBITRATION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J., CARLTON, FAIR AND JAMES, JJ., CONCUR.' WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. BARNES, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.

. The docket contained in the record reflects that summonses were issued on September 5, 2012, for the Defendants,'but it does not show that the any of the summonses were ever served. Additionally, the record reflects that on October 31, 2012, a lawyer entered an appearance on behalf of Patel only.

. The first-to-file rule is well established in Mississippi: “[W]here two suits between'the . same parties over the same controversy are brought in courts of concurrent jurisdiction, the court which first acquires jurisdiction retains jurisdiction over the whole controversy to the. exclusion or abatement of the second suit.” Issaquena Warren Ctys. Land Co. v. Warren Cty., 996 So.2d 747, 750 (¶ 8) (Miss.2008) (quoting PAS Family Partners, LP v. Onnam Biloxi, LLC, 968 So.2d 926, 929 (¶ 16) (Miss.2007))

. The trial court further found the compulsory counterclaim by New Vision, Bárot, and Patel in the Lee County Action, and Patel’s seeking to transfer this cause to Rankin County, were also inconsistent with requesting arbitration, and confirmed the waiver of arbitration.

. The Trueco decision does not inform us as to the time proximity of the filing of Breg-man’s lawsuit ánd the filing of Trucco’s lawsuit.