MAXWELL, JUSTICE, FOR THE COURT:
¶ 1. Arbitration is a contractual agreement between parties. And only agreed-upon arbitrable disputes are subject to arbitration.[1] On de novo review, this Court first determines whether an arbitration agreement is contractually valid. If it is, we then decide whether the dispute at issue is within the arbitration agreement’s scope.[2] If the arbitration agreement fails to *1054 meet both of these requireménts, the dispute cannot be arbitrated. Such is -the case here.
■ ¶ 2. We find the lessee and landlord, in this case, do have a valid arbitration agreement between them as part of a lease agreement. But the lessee’s premises-liability claim—a dispute that stems from a physical and sexual assault on the apartment complex premises—is not within the arbitration agreement’s scope, as it does not arise under or relate to her “occupancy and leasing of the [apartment].” Because the dispute is outside the agreement’s scope, the trial court ■ erred by staying proceedings and ordering arbitration.
¶ 3. We reverse and remand for further proceedings consistent with this opinion.
Background Facts and Procedural History
I; Sexual Assault
¶ 4. On the morning of April 19, 2014, Jane Doe was kidnapped by two men while walking to her car at her, apartment complex. According to Jane, the men forced her into her car at gunpoint, pistol-whipped her, and repeatedly raped her over an extended time. Jane screamed for help during the attack, which took place in the central parking lot near the leasing office.' But neither apartment-complex staff nor security responded.
II. Premises-Liability Suit
¶ 5. On July 7, 2014, Jane filed suit against the owners, managers, and individual staff of Hallmark Gardens Apartments[3] (Hallmark), Security Engineers, Inc. (SEI), and unknown John Does. In her complaint, Jane claimed Hallmark and SEI were negligent in their duty to keep the apartment complex reasonably safe. She further alleged Hallmark and SEI were aware of dangerous conditions on or near the complex.
III.. Motions to Compel Arbitration
¶ 6. Hallmark answered Jane’s complaint denying liability and raising defenses. It also specifically sought to' enforce arbitration. Jane and Hallmark, had entered a lease agreement for “Apt. 9-C, of the Hallmark Gardens Apartments located at 987 East Northside Drive Jackson, MS 39206 (the ‘Premises’).” As an addendum to her September 20, 2013 lease, Hallmark and Jane executed an arbitration agreement on March 14, 2014, but dated it effective as of September 20,2013.[4]
¶ 7. SEI likewise filed a motion to compel arbitration, citing the arbitration agreement between Jane and Hallmark. Though a nonsignatory, SEI argued its close legal relationship with Hallmark and Jane’s similar claim against it allowed it to enforce the arbitration agreement between Hallmark and Jane.[5]
¶ 8. After considering .extensive briefing and holding a hearing on the arbitration issue, the trial court granted Hallmark’s and SEI’s motions. The court found the arbitration agreement between Hallmark and Jane was valid and that Jane’s claims *1055 were within the scope of.the agreement, which both Hallmark and SEI could enforce.
IV. Appeal
¶ 9. Jane now appeals, arguing: (1) the arbitration agreement is not a broad agreement without limitations; (2) her claims fall outside the agreement’s scope; and (3) enforcement of the agreement offends public policy.
Discussion
¶ 10. This Court reviews the grant of a motion to compel arbitration de novo. Tupelo Auto Sales, Ltd. v. Scott, 844 So.2d 1167, 1169 (Miss. 2003) (citing East Ford, Inc. v. Taylor, 826 So.2d 709, 713 (Miss. 2002)). Under Mississippi’s two-prong test to determine arbitrability, this Court asks: (1) whether the parties have agreed to arbitrate the dispute, and (2) whether legal constraints external to the agreement prevent arbitration. Smith ex rel. Smith v. Captain D’s, LLC, 963 So.2d 1116, 1119-20 (Miss. 2007) (quoting Rogers-Dabbs Chevrolet-Hummer v. Blakeney, 950 So.2d 170, 173 (Miss. 2007)).
¶ 11. Jane’s first two claimed errors—the arbitration clause has limits and her claims do not fall within its scope—fall squarely within- the test’s first prong. Under this prong, this Court asks: (1) Is there a valid arbitration agreement? And, if so, (2) does the dispute fall within the scope of the agreement? Id. at 1120 (citing Rogers-Dabbs, 950 So.2d at 173).
I. Validity of the Agreement
¶ 12. Jane initially argued the arbitration agreement was invalid. But she chose not to pursue this issue on appeal. Furthermore, we find no issue with the validity of the agreement itself.[6] So we focus on the next prong,
II. Scope of the Agreement
¶ 13. In analyzing this second prong, we acknowledge the federal policy favoring arbitration. See generally Volt Info. Sciences, Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Indeed, Hallmark insists this policy means this Court must resolve the scope question in favor of arbitration. “But the United States Supreme Court has emphasized that the pro-arbitration federal policy is based on certain principles, the first and foremost being that ‘arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.’” Linde Health Care Staffing, Inc. v. Claiborne Cty. Hosp., 198 So.3d 318, 322 (Miss. 2016) (quoting AT & T Techs., Inc. v. Commc’ns Workers of Am., 475 U,S, 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)). So the federal policy favoring arbitration requires courts to compel arbitration on only those issues the parties have contracted to arbitrate. Century 21 Maselle & Assocs. v. Smith, 965 So.2d 1031, 1036 (Miss. 2007) (citing Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)); see also Noble Real Estate, Inc. v. Seder, 101 So.3d 197, 201 (Miss. Ct. App. 2012) (citing B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So.2d 483, 487 (Miss. 2005)) (emphasizing “this pro-arbitration preference does not and cannot mandate courts to compel arbi *1056 tration on issues the parties never agreed to arbitrate”).
¶ 14. Mississippi courts will “not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.” Wedgeworth, 911 So.2d at 487 (quoting Equal Emp’t Opportunity Comm’n v. Waffle House, Inc., 534 U.S. 279, 294,122 S.Ct. 754, 151 L.Ed.2d 755 (2002)). Nor can a party “be required to submit to arbitration any dispute which he has not agreed so to submit.” Pre-Paid Legal Servs., Inc. v. Battle, 873 So.2d 79, 83 (Miss. 2004) (quoting AT &T Techs., 475 U.S. at 648, 106 S.Ct. 1415).
¶ 15. The question we must decide here is: Did the parties agree to submit to arbitration Jane’s claims against Hallmark? After review, we find they did not. The parties simply did not contemplate arbitrating Jane’s assault- and rape-based lawsuit predicated upon a tort theory of common-law negligence, unrelated to the rights and obligations of the lease.

A. Jane’s Allegations

¶ 16. To answer whether Jane agreed to arbitrate her assault- and rape-based tort claims, this Court must “focus on factual allegations in the complaint rather than the legal causes of action asserted.” Scruggs v. Wyatt, 60 So.3d 758, 766 (Miss. 2011) (quoting Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A., 372 F.3d 339, 344 (5th Cir. 2004)). Here, all factual allegations giving rise to Jane’s lawsuit involve an attack in the parking lot of Hallmark apartments. Jane alleges two men forced her inside her car, beat her with a pistol, repeatedly raped her, then kidnapped her. Based on these allegations, it is clear she brought common-law, tort-based, premises-liability claims against Hallmark and SEI. She alleges Hallmark and SEI knew of criminal activity on or near the apartment complex and failed to take reasonable security measures to keep the apartment complex safe.
¶ 17. Notably, Jane’s complaint does not allege lease-based or contract-based claims. In other words, Jane does not suggest her claims “arise out of’ her “occupancy and leasing of [her apartment].” Rather, she seeks recovery based on her status as an invitee of the apartment complex and the common-law duties Hallmark and SEI owed to lessees and non-lessees alike.[7]

B. Broad Versus Narrow Arbitration Clause

1118. Hallmark and SEI seem to recognize this but still insist her claims fall within the broad language of the arbitration provision. This Court has adopted the Fifth Circuit’s distinction between “narrow” and “broad” arbitration clauses. MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 175-76 (Miss. 2006) (citing Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir.1998)). Narrow arbitration language governs disputes that “arise out of’ the contract, while broad clauses cover disputes that “relate to” or “are connected with” the contract. Pennzoil Expl., 139 F.3d at 1067. So if arbitra *1057 tion language is “broad,” then arbitration is “not limited to claims that literally ‘arise under the contract.’ ” Id. Instead, arbitration “embraces all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute.” Id.

C. Arbitration Clause’s Limiting Language

¶ 19. Hallmark relies on Pennzoil Exploration to argue its arbitration clause was equally broad and, thus, embraced all disputes with a significant relationship to Jane’s lease. Hallmark asserts Jane would not have been assaulted and raped but for her leasing of the apartment and presence in the parking lot. But we find a key distinction between the broad arbitration clause in Pennzoil Exploration and the clause here. There, the clause covered “[a]ny dispute, controversy or claim arising out of or in relation to or in connection with this Agreement”—i.e., the contractual relationship between the two parties. Id. at 1064. Here, the clause does not cover any dispute “arising out of or in any way related to” the lease—i.e., the contractual relationship between Jane and Hallmark. Rather, it explicitly covers any dispute “arising out of or in any way related to Lessee’s occupancy and leasing of the subject property.” (Emphasis added.) So the language of the arbitration clause, while “broad,” covers only disputes significantly related to Jane’s “occupancy and leasing of the subject property.”
¶ 20. We also note the arbitration agreement does not define “subject property.” But the arbitration agreement is part of the lease agreement. And under the lease agreement, Jane was leasing and occupying “Apt. 9-C of the Hallmark Gardens Apartments located at 987 East Northside Drive Jackson, MS 39206 (the “Premises”).” So the lease itself limits the “Premises” to only Apartment 9-C. Indeed, section 10 of the lease, covering “USE OF PREMISES,” says that “[t]he Lessee agrees that the Premises shall be used and occupied solely as a private dwelling of the Lessee ....”[8] Thus, the “subject property” must refer to Apartment 9-C, since that is the only property Jane both occupied and leased.
¶ 21. Consequently, we agree with Jane that the arbitration clause contains a significant limitation. While broad, it only covers matters related to the occupancy and leasing of Apartment 9-C. Returning to Jane’s allegations, we find no significant relationship between Jane’s claims and her occupancy and leasing of Apartment 9-C. Hallmark insists the location of the assault is not relevant. But the location is highly relevant. Jane was not assaulted in Apartment 9-C. She was raped in the parking lot, a common area. Also, she does not allege Hallmark violated her contractual rights as lessee of Apartment 9-C. In other words, the resolution of this dispute is not dependent upon the construction of the lease and arbitration agreement. Rather, she alleges Hallmark and SEI failed in their common-law duty to keep the parking lot reasonably safe.
¶ 22. Negligence claims existed at common law. And the agreement in this case did not place Jane and Hallmark in a relationship that created new duties not otherwise imposed by law. That Jane might not have been in the parking lot had she not leased the apartment, in our view, does not in itself mean her dispute relates *1058 to her “occupancy and leasing of the subject property.”

D. Relevant Authorities

¶ 23. While there is no Mississippi case-law directly addressing the arbitrability of an assault- or rape-based, premises-liability claim against an apartment complex or security company, both parties agree the most analogous case to the one here is Smith ex rel. Smith v. Captain D’s, LLC, 963 So.2d 1116 (Miss. 2007).
¶ 24. In Smith, this Court held the plaintiffs rape-based tort claims—negligent hiring, supervision, and retention of the manager who allegedly sexually assaulted her—were “unquestionably” beyond the scope of the arbitration clause. Id. at 1121. In that case, like this one, the arbitration agreement was broad. But it provided that all “claims, disputes, or controversies arising out of or relating to [her] ,.. employment” would be resolved through arbitration. Id. at 1120 (emphasis added). We found the rape-based tort claims were unrelated to employment. Id. at 1121. Therefore, they fell outside the arbitration agreement’s scope.
¶25. Hallmark tries to distance itself from Smith. It asserts that, because Jane did not allege an apartment employee committed the rape or assault, Smith does not apply. While Hallmark is correct that Smith does not concern third-party liability, as this case does, Smith’s basic premise* still applies—that even broad arbitration clauses may have limits. See also Pennzoil Expl., 139 F.3d at 1067 n.8 (“We realize that even broad clauses have their limits.”). There, arbitration was limited to “employment.” And Smith’s rape-based claims were not “employment” disputes. Here, as already discussed, Jane and Hallmark’s arbitration agreement was limited to matters related to the “occupancy and leasing” of Apartment 9-C, And like' Smith, Jane’s rape-based, premises-liability claims are unrelated to her occupancy and leasing of Apartment 9-C.
¶26. Importantly, in Smith, it could have been argued that, but for her employment, she would never have been raped by her manager. But this Court recognized this incidental connection did not convert her rape-based claims into an “employment” dispute. The same is true here. While Hallmark insists that, but for Jane’s lease, she would not have been in the parking lot, this leasing connection is incidental and not significantly related enough to convert her common-law, personal-injury claim into an “occupancy and leasing” dispute.
¶ 27. However, in spite of Smith, Hallmark claims Community Care Center of Vicksburg, LLC v. Mason, 966 So. 2d 220 (Miss. Ct. App. 2007), should control.[9] There, a nursing-home resident alleged she was assaulted by another resident in the facility, and that assault resulted in her fractured hip. Mason, 966 So.2d at 224. In contrast to this Court’s holding in Smith, the Mississippi Court of Appeals found Mason’s assault-based tort claims of negligence, negligence per se, premises liability, and gross negligence were within the arbitration agreement’s scope. Id. at 229, Like Smith and this case, the arbitration agreement in Mason was broad. But unlike Smith or this case, the.arbitration agreement covered “'... any legal dispute, controversy, demand or claim ... that arises out of or related to thb admission agree *1059 ment or any services or health care provided by the Facility ....” Mason, 966 So.2d at 231. In other words, instead of limiting arbitration to a specific aspect of the contractual relationship—such as “employment” or “occupancy”—the arbitration clause in Mason expanded the scope to cover not just matters related to the admission agreement but also “any services or care provided” by the nursing home. So, while the holding in Mason appears,. at first blush, to favor Hallmark, it is,only because the underlying arbitration agreement’s language covers more disputes.
¶28. The same is true for the other persuasive authorities Hallmark cites. For example, Hallmark cites-an unpublished federal-court opinion as support that the present arbitration agreement is broad enough to cover Jane’s claims. Page v. Captain D’s LLC, Civ. Action No. 2:12cv105-KS-MTP, 2012 WL 5930611 (S.D. Miss. November 27, 2012). In Page, the district court compelled arbitration of an employee’s sexual-assault-based, sexual-harassment and retaliatory-discharge claims, among others, that allegedly occurred at her employer’s restaurant. Id. at *9. But in Page, the ágreement compelled arbitration of claims that “relate to, arise from, concern, or involve in any way ... the employment of the employee, or. any other matter between the Company and the employee, whether or not involving the employee’s employment with the Company.” Id. at *1. Also, under that agreement—unlike this one—the parties agreed to arbitrate “allegations of discrimination based on ... sex ... wrongful discharge or wrongful termination ,.. negligence and willful misconduct.” Id. Again, the arbitration agreement at hand does not mention negligence. Nor does it cover “any matter between” Hallmark and Jane—only those “arising out of or related to Lessee’s occupancy and leasing of subject property.” So Page is easily distinguished based on the extremely broad scope of the arbitration clause in that case.
¶ 29. Hallmark also rites a case from a Florida trial court, BKD Twenty-One Management Co., Inc. v. Delsordo, 127 So.3d 527 (FI. Ct. App. 2012), which found negligence-based tort claims by a resident who fell in a common area had to be arbitrated. But in that case, the arbitration clause expressly covered “negligence” claims “amongst the Parties.” Id.. at 531, In fact, the trial court in that case relied on an opinion by, the Florida Supreme Court, Seifert v. U.S. Home Corp., 750 So.2d 633, 642 (Fla. 1999), which, had found “that it would be unjust to require arbitration where there was no indication in, the arbitration provision that tort claims arising under the common law were contemplated or included.” Delsordo, 127 So.3d at 531. But “unlike the arbitration provision in Seifert, which had no indication that it applied to independent tort claims, the arbitration agreement in [Delsordo ] expressly applie[d] to negligence claims.” Id. So Delsordo is also easily distinguished based on its express inclusion of negligence claims.
¶ 30. In the end, perhaps just as telling as what language Hallmark’s arbitration clause includes is what the arbitration clause leaves, out. In contrast to Mason, Hallmark’s arbitration clause here does not include claims beyond those related to the contract, but instead restricts arbitration to claims related to “occupancy and leasing of the subject property.” In contrast to Page, the arbitration clause here does not cover “any matter between” Hallmark and Jane. And in contrast to Delsor-do, the arbitration clause, here makes no mention of agreeing to arbitrate tort, negligence, personal injuryj or other common-law claims. See Seifert, 750 So.2d at 635 (holding “that an agreement to arbitrate ... does not necessarily mandate arbitra *1060 tion of a subsequent and independent tort action based upon common law duties.”).
¶31. As the drafter of the arbitration clause, Hallmark could have easily included language indicating tort claims based on common-law duties would be' subject to arbitration. But Hallmark did not.[10]
¶ 32. Instead, Hallmark drafted an arbitration clause including the limiting phrase “occupancy and leasing of subject property” and omitting any language indicating Jane would have to arbitrate claims based on personal injury, common-law duties, or tort. And despite Hallmark’s assertions, the fact that Jane might not have been in the parking, lot had she not leased the apartment does not itself make her dispute arise out of or relate to her “occupancy and leasing of the subject property.”
¶33. We thus find Jane’s claims fall outside the arbitration agreement’s scope.[11]
Conclusion
¶ 34. Because Jane’s premises-liability claims fall outside the arbitration agreement’s, scope, we find the trial court erred by staying proceedings and compelling arbitration. We reverse the trial court’s order to stay the proceedings and compel arbitration. And we remand this case to the trial court for further proceedings consistent with this opinion.
¶ 35. REVERSED AND REMANDED.
WALLER, C.J., RANDOLPH, P.J., KITCHENS, KING, COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR. DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION-

. See Wellness, Inc. v. Pearl River Cty. Hosp., 178 So.3d 1287, 1290 (Miss. 2015) (citing AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

. See Smith ex rel. Smith v. Captain D’s, LLC, 963 So.2d 1116, 1119-20 (Miss. 2007) (quoting Rogers-Dabbs Chevrolet-Hummer v. Blakeney, 950 So.2d 170, 173 (Miss. 2007)).

. These defendants are Hallmark Partners, LP; SJP One, LLC; New Horizons Development, LLC; New Horizons' Management, LLC; and Veronica Moore. New Horizons Development, LLC, was later dismissed without prejudice by stipulation on January 28, 2015.

. According to Hallmark, Jane sighed an identical arbitration agreement whén signing the lease agreement, but because of an error, a new arbitration agreement was later execut-éd and the previous one was destroyed.

. SEI had a contract with Hallmark to pro- ' vide security services for the apartment complex. On appeal, Jane does hot contest SEI’s ’ rights to compel arbitration as a nonsignatory to the 'arbitration agreement.

. Jane argued the arbitration agreement was signed several months after she signed her lease, and that she had no choice but to sign, Hallmark countered with an affidavit from a manager that Jane had signed two arbitration agreements, And the later agreement -was merely to correct errors in the first. On appeal, Jane does not advance any-substantive or pro'cedural-unconscionability defenses.

. Although not the insurer of an invitee’s safety, a premises owner does have the duty “to keep the premises reasonably safe, and when not reasonably safe, to warn only where there is a hidden danger or peril that is not in plain and open view.” Corley v. Evans, 835 So.2d 30, 37-38 (Miss. 2003) (quoting Caruso v. Picayune Pizza Hut, Inc., 598 So.2d 770, 773 (Miss. 1992)). "[T]his duty extends to protecting tenants from the foreseeable criminal acts of others.” Price v. Park Mgmt., Inc., 831 So.2d 550, 551 (Miss. Ct. App. 2002) (citing Tharp v. Bunge Corp., 641 So.2d 20, 25 (Miss. 1994); O'Cain v. Harvey Freeman & Sons, Inc., 603 So.2d 824, 830 (Miss. 1991)).

. Sections 1, 4, 6, 9-13, 15-17, 21-26, 29-37, 40, and 42 of the lease all contain references to the "Premises” and, with little variation, make it clear that the "Premises” refers to Apartment 9-C only.

; Hallmark also cites an unpublished order from the United States District Court for the Southern District of Mississippi—Woodard v. Pebble Creek, Civ. Action No. 3:06-cv-Q0661 (S.D. Miss. December 17, 2007)—that purportedly compelled arbitration in a rape-based premises-liability case, But Hallmark neither provides the order nor discusses the relevant arbitration agreement’s terms or the district court's analysis.

.Hallmark makes the assertion that, because specific disputes were expressly exempted from arbitration, then all other disputes must be submitted to arbitration. Hallmark did specifically exclude disputes: “(a) of $5,000.00 or less; or (b) of any amount relating to rent payment disputes as provided for in the Lease Agreement; or (c) of any amount relating to damage to the Lessor's properly as provided for in the Lease Agreement .... ” However, Hallmark's argument rings hollow. The existence- of specific exclusions is not evidence the parties intended to arbitrate all other matters. Moreover, Hallmark's argument here fails to overcome the plain, limiting language of the agreement—that only a “dispute, claim or' controversy (except as expressly identified below) arising out of or in any way related to Lessee’s occupancy and leasing of the subject property ...” will be arbitrated. (Emphasis added.)

. Because we find Jane’s claims do not fall within the scope of the arbitration clause, we need not address Jane’s alternative argument—that, as a matter of public policy, arbitration agreements in ■ residential leases should be void.