# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00572-SCT

*BRIAN RAY PEDIGO*

*v.*

*KRISTOPHER ROBERTSON, RENT-A-CENTER,*
*INC. AND RENT-A-CENTER EAST, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/24/2016 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| TRIAL COURT ATTORNEYS: | THOMAS H. COMER, JR. |
| | GREG E. BEARD |
| | CHRISTOPHER DANIEL MEYER |
| COURT FROM WHICH APPEALED: | PRENTISS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | GREG E. BEARD |
| | THOMAS H. COMER, JR. |
| ATTORNEY FOR APPELLEES: | CHRISTOPHER DANIEL MEYER |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 10/26/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KITCHENS AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1. This appeal stems from Brian Ray Pedigo's suit against Rent-A-Center, Inc., for actual and punitive damages, alleging claims of malicious prosecution, false imprisonment, and intentional infliction of emotional distress. After a preliminary review of the matter, the Prentiss County Circuit Court found in favor of Rent-A-Center, ruling that the parties entered a valid and enforceable arbitration agreement which covered Pedigo's claims. Such a ruling was in error. Though broad, the arbitration agreement did not contemplate Pedigo having to

arbitrate his claim that Rent-A-Center maliciously swore out a criminal affidavit, causing his wrongful incarceration. Accordingly, we reverse the previous ruling and remand the case to the circuit court for further action consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶2. On October 26, 2012, Brian Ray Pedigo visited Rent-A-Center, Inc.'s (RAC) Booneville, Mississippi, location. While in the store, Pedigo decided to make the rental-purchase of a back-lit, LED television and entered a Rental Purchase Agreement (RPA) for the lease. Under the RPA, Pedigo agreed to make specified payments over the course of twenty-three months, in an effort to own the television after all payments were remitted. Incorporated within the RPA was RAC's standard Consumer Arbitration Agreement (CAA). The CAA outlined those claims covered and those not covered in a dispute between the parties, and the process the parties would engage in should a dispute arise. Pedigo initialed and signed both documents, agreeing to the terms within.

¶3. By February 2013, Pedigo had failed to fulfill his payment obligations under the RPA and was more than twenty days past-due under the agreement. Finding the contract had been breached, RAC manager Kristopher Robinson sought to recover the television from Pedigo. Through his attempts at recovery, Robinson discovered that the television was pawned shortly after it was leased. RAC contacted the pawn shop, and its owner confirmed that the television was pawned at his store in November 2012, for $100.

¶4. After discovering Pedigo had pawned the television, Robinson filed a complaint with the Booneville police in April 2013. Robinson detailed that Pedigo had leased the television,

2

pawned it roughly one month later, and still owed the store more than $1,300 under the RPA. Based on this information, an arrest warrant for the theft of rental property was issued for Pedigo on May 1, 2013. He was indicted on October 22, 2013, for defrauding RAC, and was arrested and incarcerated on December 11, 2013. On June 9, 2014, the State retired the October 2013 felony charge, ending the prosecution of the criminal matter.

¶5.     Following his release, Pedigo filed this civil action claiming that RAC filed a false report with the police which resulted in his incarceration–an act that he claims amounted to malicious prosecution. RAC responded to Pedigo's complaint with a motion to compel arbitration and stay the proceedings. Referencing the RPA and the CAA, RAC argued that Pedigo's claims are covered by the broad provisions of the arbitration agreement and the matter should be stayed for arbitration on the claims. On March 24, 2016, the circuit court judge ruled on the motion and found that the CAA met all elements required by courts of this state and the Federal Arbitration Act (FAA), making the CAA enforceable under the circumstances in this matter. He then compelled the parties to move forward with arbitration and stayed the proceedings pending that outcome.

¶6.     Aggrieved, Pedigo filed this appeal, presenting two issues for review. Because our ruling on the question of whether Pedigo's malicious prosecution claim is within the scope of the CAA settles the matter before us, we address only the first issue on appeal.[1]

---

[1] Pedigo's second issue asked the Court to find that RAC waived its right to arbitration when it invoked the judicial process through its criminal complaint, detrimentally prejudicing him and properly situating the suit before the circuit court. Because we find Pedigo's suit to be outside the scope of the arbitration agreement, we need not address whether RAC waived its right to arbitration.

**STANDARD OF REVIEW**

¶7.    "A trial court's grant or denial of a motion to compel arbitration is a question of law; therefore, we apply a *de novo* standard of review on appeal." ***Smith ex rel. Smith v. Captain D's, LLC***, 963 So. 2d 1116, 1119 (Miss. 2007) (citing ***Howard v. Estate of Harper***, 947 So. 2d 854, 856 (Miss. 2006)).

**LEGAL ANALYSIS AND APPLICATION**

¶8.    This Court exercises a strong presumption in favor of arbitration and liberally construes those agreements in an effort to encourage the settlement of disputes. ***IP Timberlands Operating Co., Ltd. v. Denmiss Corp***., 726 So. 2d 96, 104 (Miss. 1998) (citing ***Hutto v. Jordan***, 36 So. 2d 809, 812 (Miss. 1948)). We interpret arbitration agreements "so as to encourage the settlement of disputes and the prevention of litigation, and every reasonable presumption will be indulged in favor of the validity of arbitration agreements." ***IP Timberlands***, 726 So. 2d at 104. Such arbitration agreements must be valid, and the disputed claims must be within the substantive scope of that agreement. ***Smith***, 963 So. 2d at 1120.

¶9.    To determine the validity of an arbitration agreement under the Federal Arbitration Act, this Court has adopted the customary, two-pronged inquiry. *See **East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002). The first prong considers two factors: (1) whether a valid arbitration agreement exists, and (2) whether the parties' dispute is within the scope of the valid arbitration agreement. ***Smith***, 963 So. 2d at 1119. The second prong–promulgated by the U.S. Supreme Court–asks "whether legal constraints external to

4

the parties' agreement foreclosed arbitration of those claims." ***East Ford***, 826 So. 2d at 713 (quoting ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.***, 473 U.S. 614, 626, 105 S. Ct. 3346 (1985)). Because the parties do not dispute the validity of the agreement in question, nor do they argue that legal constraints, external to their agreement, foreclose the possibility of arbitration, we quickly move to analyze the second factor of the inquiry's first prong.

¶10. In the present appeal, Pedigo alleges that his claim of malicious prosecution is outside the scope of those claims discussed in the arbitration agreement. He insists that the CAA did not contemplate the filing of criminal charges, situating RAC's efforts to arrest and incarcerate him outside the terms of the CAA. Because the criminal complaint and its resultant events were unrelated to the arbitration agreement, Pedigo argues the matter was properly pleaded before the circuit court.

¶11. The CAA provides two sections detailing "what claims are covered" and "what claims are not covered." Those provisions state:

> (B) **What Claims Are Covered**: "Claim" shall be interpreted as broadly as the law allows and means any dispute or controversy between you and RAC, its officers, directors, employees, or agents, its parent company, subsidiary, affiliate entities, and assigns of any of them, based on any legal theory, including, but not limited to allegations based on negligence, breach of contract, tort, fraud, misrepresentation, trespass, the common law, or any statute, regulation or ordinance.
>
> (C) **What Claims Are Not Covered**: Either Party shall have the right to file a lawsuit in a court of competent jurisdiction only if the lawsuit or Claim is strictly limited to requests for individual non-class injunctive relief and/or individual non-class declaratory relief to determine the right of possession of any property, and/or a Claim that requests/seeks monetary relief/damages not to exceed $5,000 including attorney's fees. Any Claim seeking monetary

5

> relief/damages including any counterclaims, greater than $5,000.00 including attorney's fees shall only be resolved by arbitration pursuant to this Agreement.

Pedigo argues that through the RPA–which prohibits the sale, mortgage, pawn, pledge, encumbrance, hocking, or disposal of the leased property–RAC contemplated a pawn scenario and provided relief for such a dispute in the arbitration agreement. However, the agreement fails to contemplate that a lessor/signatory might pawn collateral and subsequently be indicted and jailed based upon an affidavit from an RAC representative.

¶12.   We note that "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." ***Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney***, 950 So. 2d 170, 176 (Miss. 2007) (quoting ***EquiFirst Corp. v. Jackson***, 920 So. 2d 458, 461 (Miss. 2006)). Thus, as with any other contract, the parties' intentions control. ***Mitsubishi Motors Corp.***, 105 S. Ct. at 3354, 473 U.S. at 626.

¶13.   Applying this general rule, we look to the mutual intentions of the parties. ***Id.*** (citing ***Kight v. Sheppard Bldg. Supply Inc.***, 537 So. 2d 1355, 1358 (Miss. 1989)). Here, the arbitration language used is "broad" and "capable of expansive reach," requiring only "that the dispute 'touch' matters covered by [the contract]." ***MS Credit Center, Inc. v. Horton***, 926 So. 2d 167, 176 (Miss. 2006).[2] Therefore, the claims that "touch matters" covered by the CAA need only reflect the parties' intentions and "relate to" or "connect with" the facts

---

[2] "Courts often characterize arbitration language as either broad or narrow. Broad arbitration language governs disputes 'related to' or 'connected with' a contract, and narrow arbitration language requires arbitration of disputes that directly 'arise out of' a contract." ***MS Credit Center, Inc. v. Horton***, 926 So. 2d 167, 175–76 (Miss. 2006) (citing ***Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.***, 139 F. 3d 1061, 1067 (5th Cir.1998)).

alleged in Pedigo's complaint. As a result, we "'focus on factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying those claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them.'" *Wolgin v. Experian Info. Sols., Inc.*, 101 So. 3d 1160, 1166 (Miss. 2012) (quoting *Scruggs v. Wyatt*, 60 So. 3d 758, 766 (Miss. 2011)).

¶14. This Court recently applied these rules to matters, in similar form, when we addressed the arbitration agreements in *Doe v. Hallmark Partners, LP*, 2017 WL 2001163 (Miss. 2017), and *Smith*, 963 So. 2d 1116. In *Smith*, we held that the plaintiff's rape-based tort claims were "unquestionably" beyond the scope of the arbitration agreement. *Smith*, 963 So. 2d at 1121. Therein, we found the arbitration agreement was broad, but it specified that all "claims, disputes, or controversies arising out of or relating to . . . employment" would be resolved through arbitration. *Id*. at 1120. As a result, we found the rape-based tort claims were unrelated to employment and were outside the scope arbitration. *Id*. at 1121.

¶15. Likewise, in *Doe*, we reviewed whether a lessee's premises-liability claim, stemming from a physical and sexual assault on the apartment-complex premises, was within the scope of the arbitration clause associated with the parties' lease agreement. *Doe*, 2017 WL 2001163, at *1. There, the owners, managers, and individual staff of Hallmark Gardens Apartments sought to enforce the arbitration provision of Jane Doe's lease after she filed suit against the property. After a thorough analysis, we determined that "the parties simply did not contemplate arbitrating Jane's assault- and rape-based lawsuit predicated upon a tort theory of common-law negligence, unrelated to the rights and obligations of the lease." *Id.*

7

at *3. Finding that Doe's claims did not arise under or relate to her "occupancy and leasing of the [apartment]," we held that the dispute was outside the agreement's scope, and Doe was free to pursue her claims against Hallmark through litigation. *Id.* at *6.

¶16.    Like our rulings in **Doe** and **Smith**, today we find that the claims in question are beyond the scope of the parties' arbitration agreement.  Here, the agreement did not contemplate the possibility that RAC would file a criminal complaint against a signatory/lessor, causing him to suffer the pains of a criminal indictment, subsequent imprisonment, and eventual release without prosecution.  The CAA provisions are sufficiently broad, and the agreement shows the intent and mutual agreement by the parties to arbitrate all civil matters related to the lease of the television; though, notably absent from the CAA is the parties' agreement to arbitrate civil matters related to a potential criminal indictment.  We reiterate that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." **Blakeney**, 950 So. 2d at 176. Therefore, we cannot require Pedigo to arbitrate civil claims related to the criminal complaint.

## CONCLUSION

¶17.    Pedigo's suit is based on RAC's allegedly malicious swearing out of a criminal complaint–an action not contemplated by the CAA.  As a result, RAC has not shown that the parties agreed to arbitrate this dispute and has failed to satisfy the first prong of the test outlined in **East Ford**.  For that reason, we reverse the circuit court's decision to stay proceedings for arbitration and remand the matter for proceedings consistent with this opinion.

8

¶18.   **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., KING, COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR.**