# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-IA-00010-SCT

*REBECCA KEYES*

*v.*

*DOLLAR GENERAL CORPORATION*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/15/2016 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| TRIAL COURT ATTORNEYS: | MARK K. TULLOS |
| | JAKLYN LEIGH WRIGLEY |
| | EDWARD FRANCIS HAROLD |
| | TIMOTHY M. FARRIS |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MARK K. TULLOS |
| | CRAIG N. ORR |
| ATTORNEYS FOR APPELLEE: | EDWARD FRANCIS HAROLD |
| | JAKLYN LEIGH WRIGLEY |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 04/12/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Rebecca Keyes, a former employee of Dollar General, filed suit against Dollar General Corporation; DG Mize, LLC; Dolgencorp, LLC d/b/a Dollar General Store #11775 (collectively "Dollar General"), alleging counts of malicious prosecution, infliction of emotional distress, defamation, false imprisonment, fraud, deceit, and misrepresentation,

after Dollar General filed a criminal affidavit against Keyes in the Municipal Court of Mize, Mississippi, causing Keyes to be arrested for embezzlement. Dollar General filed a motion to dismiss and compel arbitration, which was granted by the Circuit Court of Smith County. With the exception of the defamation claim, we find that the trial court erred in compelling arbitration, for Keyes's remaining claims are not within the scope of the arbitration agreement. We affirm the trial court's order as to the defamation claim and reverse its judgment as to the remaining claims, remanding for proceedings consistent with this opinion.

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

¶2. The underlying facts of Keyes's alleged embezzlement are not at all clear from the record. In the Complaint, Keyes alleged that:

> on or about May 28, 2015, Plaintiff, Rebecca Keyes, was an employee of Dollar General in Mize, Smith County, Mississippi. On said date, Rebecca performed a cash reload to a money network card in the amount of $500.00, which did not go through properly. Rebecca Keyes informed her manager of the problem and placed the receipt on the office desk. Rebecca was told not to worry about the problem and that it would be fixed. On June 2, 2015, Rebecca Keyes was arrested for embezzlement. Thereafter, on July 16, 2015, Rebecca was found not guilty of the charges.

Keyes moved to have the charges dismissed for failure of a Dollar General representative to appear and prosecute the claims. Her motion was granted. She then filed the instant lawsuit.

¶3. Dollar General filed its Motion to Dismiss and Compel Arbitration, requesting that all of Keyes's claims be dismissed or alternatively stayed, and that she be compelled to submit her claims to binding arbitration. Michael Rusie, Senior Director, Labor and Employment Law at Dollar General Corporation, provided sworn testimony that all employees hired by Dollar General in and after August 2014 were presented with Dollar

2

General's Employee Arbitration Agreement. Each employee had the option of consenting to the agreement or opting out. When Keyes was hired in November 2014, she checked the box indicating that she "agree[d] to the terms of the Agreement. I understand and acknowledge that by checking this box, both Dollar General and I will be bound by the terms of this Agreement." Pertinent parts of the agreement read as follows:

> You agree that, with the exception of certain excluded claims described below, any legal claims or disputes that you may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors *arising out of your employment with Dollar General or termination of employment with Dollar General* ("Covered Claim" or "Covered Claims") will be addressed in the manner described in this Agreement. You also understand that any Covered Claims that Dollar General may have against you *related to your employment* will be addressed in the manner described in this Agreement.

> . . .

> The procedures in this Agreement will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General. This includes, but is not limited to, claims alleging violations of wage and hour laws, state and federal laws prohibiting discrimination, harassment, and retaliation, claims for *defamation* or violation of confidentiality obligations, claims for wrongful termination, tort claims, and claims alleging violation of any other state or federal laws, except claims that are prohibited by law from being decided in arbitration, and those claims specifically excluded in the paragraph below.

> Covered Claims do <u>not</u> include claims for unemployment insurance benefits, workers' compensation benefits [workers' compensation discrimination and retaliation claims <u>are</u> Covered Claims], whistleblower claims under the Sarbanes-Oxley Act, and claims for benefits under the Employee Retirement Income Security Act. Covered Claims also do not include claims pending in court as of the date this Agreement is signed by you, and claims concerning the scope or enforceability of this Agreement.

(Emphasis added.)

3

¶4.     Keyes did not dispute the existence of the Arbitration Agreement, but she argued the agreement was unconscionable, that Dollar General had waived its right to arbitrate by filing criminal proceedings against Keyes, and that her claims were not covered within the scope of the Arbitration Agreement.

¶5.     Dollar General argued that it did not file charges against Keyes; it simply "reported something to the police. . . . It simply exercised its right to make a criminal complaint to the police department, and the police department kind of got the ball rolling, and then the rest is history, so to speak." It further argued that the agreement inherently applied to civil, not criminal matters. Dollar General admitted that it had the option of seeking recoupment of its lost money through arbitration but did not pursue it because its goal was to bring "an offender to justice." Dollar General argued it did not waive arbitration because it could have a parallel criminal claim, while pursuing claims against Keyes in civil court (or arbitration).

¶6.     The trial judge found that Keyes's claims most likely related back to the agreement, but his concern was whether Dollar General had waived arbitration by first filing criminal charges in the municipal court. While the trial judge stated that he agreed with Keyes's argument, he likened this case to "self-help" cases, where this Court had held "taking possession of the collateral or other similar actions [did] not waive a party's right to arbitration," because self-help did not equate to judicial proceedings. *See Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 724 (Miss. 2002). The trial court granted Dollar General's motion to dismiss and compelled Keyes's claims to be submitted to arbitration.

## STATEMENT OF THE ISSUES

¶7. Keyes appealed and raised three issues, which we have consolidated and restated as follows:

I. **WHETHER KEYES'S CLAIMS ARE "COVERED CLAIMS" WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.**

II. **IF KEYES'S CLAIMS ARE "COVERED CLAIMS" UNDER THE ARBITRATION AGREEMENT, WHETHER DOLLAR GENERAL WAIVED ITS RIGHT TO ARBITRATE BY FILING CRIMINAL CHARGES IN MUNICIPAL COURT.**

## STANDARD OF REVIEW

¶8. "A trial court's grant or denial of a motion to compel arbitration is a question of law; therefore, we apply a de novo standard of review on appeal." ***Smith ex rel. Smith v. Captain D's, LLC***, 963 So. 2d 1116, 1119 (Miss. 2007) (citing ***Howard v. Estate of Harper***, 947 So. 2d 854, 856 (Miss. 2006)).

## ANALYSIS

¶9. This Court exercises a strong presumption in favor of arbitration. ***IP Timberlands Operating Co., Ltd. v. Denmiss Corp.***, 726 So. 2d 96, 104 (Miss. 1998) (citing ***Hutto v. Jordan***, 204 Miss. 30, 36 So. 2d 809, 812 (1948)). Such arbitration agreements must be valid, and the disputed claims must be within the substantive scope of that agreement. ***Smith***, 963 So. 2d at 1120. To determine the validity of an arbitration agreement under the Federal Arbitration Act, this Court has adopted the customary, two-pronged inquiry. *See **East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002). The first prong considers two factors: (1) whether a valid arbitration agreement exists, and (2) whether the parties' dispute is within the scope of the valid arbitration agreement. ***Smith***, 963 So. 2d at 1119. The second prong

5

asks "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." *East Ford*, 826 So. 2d at 713 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). The parties do not dispute the validity of the agreement in question. Therefore, we will look only at the second factor of the inquiry's first prong.

## I. WHETHER KEYES'S CLAIMS ARE "COVERED CLAIMS" WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

¶10.    "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So. 2d 170, 176 (Miss. 2007) (quoting *EquiFirst Corp. v. Jackson*, 920 So. 2d 458, 461 (Miss. 2006)).

> In determining the scope of the arbitration agreement, "[c]ourts often characterize arbitration language as either broad or narrow." *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 175 (Miss. 2006). The United States Supreme Court has found similar language--"any controversy or claim arising out of or related to"--to constitute a broad arbitration provision. *Smith Barney, Inc. v. Henry*, 775 So. 2d 722, 726 (Miss. 2001) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967)). "Because broad arbitration language is capable of expansive reach, courts have held that it is only necessary that the dispute 'touch' matters covered by the contract to be arbitrable." *Horton*, 926 So. 2d at 176 (internal quotation marks omitted). Further, "relate" means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with"; with "to." Black's Law Dictionary 892 (abr. 6th ed. 1991).

*Smith*, 963 So. 2d at 1121.

¶11.    The Arbitration Agreement reads that it "will be the exclusive means of resolving Covered Claims relating to or arising out of your employment or termination of employment with Dollar General, whether brought by you or Dollar General." This "broad" language is

6

"capable of expansive reach," requiring only "that the dispute 'touch' matters covered by [the contract]." ***Horton***, 926 So. 2d at 176. Therefore, the claims that "touch matters" covered by the Arbitration Agreement need only reflect the parties' intentions and "relate to" or "connect with" the facts alleged in Keyes's complaint. As a result, we "focus on factual allegations in the complaint rather than the legal causes of action asserted. If the allegations underlying those claims 'touch matters' covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." ***Wolgin v. Experian Info. Sols., Inc.***, 101 So. 3d 1160, 1166 (Miss. 2012) (quoting ***Scruggs v. Wyatt***, 60 So. 3d 758, 766 (Miss. 2011)).

¶12.    This Court recently applied these rules to matters in similar form when we addressed the arbitration agreements in ***Pedigo v. Robertson***, 2017 WL 4838243 (Miss. Oct. 26, 2017), ***Doe v. Hallmark Partners, LP***, 227 So. 3d 1052 (Miss. 2017), and ***Smith***, 963 So. 2d 1116. In ***Smith***, we held that the plaintiff's rape-based tort claims were "unquestionably" beyond the scope of the arbitration agreement, as they were unrelated to her employment. ***Id.*** at 1121.

¶13.    In ***Doe***, we determined that "the parties simply did not contemplate arbitrating Jane's assault- and rape-based lawsuit predicated upon a tort theory of common-law negligence, unrelated to the rights and obligations of the lease." ***Doe***, 227 So. 3d at 1056. Therefore, we held that Doe's claims did not arise under or relate to her "occupancy and leasing of the [apartment]," and Doe was free to pursue her claims against Hallmark through litigation. ***Id.*** at 1059-60.

¶14. Finally, in *Pedigo*, we held that "the agreement did not contemplate the possibility that RAC would file a criminal complaint against a signatory/lessor, causing him to suffer the pains of a criminal indictment, subsequent imprisonment, and eventual release without prosecution." *Pedigo*, 2017 WL 4838243, at \*4. Similar to today's case, Pedigo filed a suit against Rent-A-Center, Inc., alleging claims of malicious prosecution, false imprisonment, and intentional infliction of emotional distress. *Id.* at \*1. Pedigo made a rental-purchase of a television, and his rental-purchase agreement contained an arbitration clause. *Id.* Pedigo failed to make his payments and then pawned the television. *Id.* The store's manager filed a complaint with the police, and Pedigo was arrested. *Id.* He was then indicted and incarcerated, but the felony charge later was retired by the State. *Id.* Pedigo filed a civil action against Rent-A-Center, and the store moved to dismiss and compel arbitration. *Id.*

¶15. This Court found Pedigo's claims to be beyond the scope of the arbitration agreement. *Id.* at \*4.

> Here, the agreement did not contemplate the possibility that RAC would file a criminal complaint against a signatory/lessor, causing him to suffer the pains of a criminal indictment, subsequent imprisonment, and eventual release without prosecution. The CAA provisions are sufficiently broad, and the agreement shows the intent and mutual agreement by the parties to arbitrate all civil matters related to the lease of the television; though, notably absent from the CAA is the parties' agreement to arbitrate civil matters related to a potential criminal indictment. We reiterate that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Blakeney*, 950 So. 2d at 176. Therefore, we cannot require Pedigo to arbitrate civil claims related to the criminal complaint.

*Id.*

¶16. Today's question of scope is whether Keyes's claims of malicious prosecution, infliction of emotional distress, defamation, false imprisonment, fraud, deceit, and misrepresentation "relate[s] to or arise[s] out of [Keyes's] employment or termination of employment with Dollar General," so as to subject her claims to arbitration.

¶17. Dollar General argues the issues "touch upon" Keyes's employment, as she alleges her employer falsely accused her of stealing a $500 gift card, but the transaction was caused by a register error.

> Thus, Plaintiff's claims will necessarily involve significant testimony about her duties as an employee with regard to gift cards, other employees' duties as they regard the gift card, the systems through which Dollar General concluded she had stolen the gift card, her interview as an employee with Dollar General's Loss Prevention Department regarding the gift card, and the reasons behind her termination.

¶18. While Dollar General argues that the Arbitration Agreement "defined covered claims very broadly to include any matter on any claim or dispute that arose out of . . . or related to the employment or termination" of Keyes, it claims that the charges filed by Dollar General against Keyes in the municipal court were not covered. Keyes argues Dollar General's own action in pursuing criminal claims in municipal court is evidence that the parties did not intend to arbitrate any claims related to a criminal charge.

¶19. The Arbitration Agreement contains no exclusions of any criminal proceedings, but it expressly includes claims for defamation. Keyes's claim for defamation is within the scope of the Arbitration Agreement. The order of the trial court is affirmed as to the defamation claim, and the court is instructed to stay this claim, pending arbitration.

9

¶20. As to all other claims, we find that, like *Pedigo*, *Doe*, and *Smith*, Keyes's claims are beyond the scope of the Arbitration Agreement. When Keyes agreed to arbitrate all claims arising out of her employment or termination of employment with Dollar General, no evidence was presented that she contemplated she would be arrested for embezzlement and later have those charges dismissed after Dollar General refused to prosecute. The Arbitration Agreement specifically identified defamation as a covered claim. However, as the author of the Arbitration Agreement, Dollar General did not include claims of malicious prosecution, infliction of emotional distress, false imprisonment, fraud, deceit, and misrepresentation as covered claims.[1]

¶21. Keyes's suit is based on Dollar General's swearing out of a criminal complaint against her. Such an action was not included in the Arbitration Agreement. We reverse the circuit court's decision ordering Keyes's claims of malicious prosecution, infliction of emotional distress, false imprisonment, fraud, deceit, and misrepresentation to arbitration and remand those claims for proceedings consistent with this opinion. Keyes is free to pursue them against Dollar General in the circuit court.

**II. IF KEYES'S CLAIMS ARE "COVERED CLAIMS" UNDER THE ARBITRATION AGREEMENT, WHETHER DOLLAR GENERAL WAIVED ITS RIGHT TO ARBITRATE BY FILING CRIMINAL CHARGES IN MUNICIPAL COURT.**

---

[1] Additionally, the Federal Arbitration Act, while pro-arbitration, "does not contemplate the arbitration of criminal activity."*Prescott-Follett & Assocs., Inc. v. Delasa/Prescott Follett & Assocs.*, No. Civ. A. 01-3178, 2002 WL 31528463, at *5 (E.D. La. Nov. 8, 2002) (citing *Myers v. Rosenberg*, No. 83 C 1342, 1986 WL 3329, at *2 (N.D. Ill. March 7, 1986)).

¶22. As to the second prong regarding legal constraints external to the agreement foreclosing the possibility of arbitration, Keyes argues that, even if any of her claims were covered under the Arbitration Agreement, Dollar General waived its right to arbitrate by filing criminal charges against her in municipal court. Dollar General argues that merely reporting a crime to the authorities does not invoke the judicial process, as is required in a finding of waiver. *See University Nursing Assocs., PLLC v. Phillips*, 842 So. 2d 1270, 1278 (Miss. 2003) (waiver could be found when the party seeking arbitration "substantially invokes the judicial process to the detriment or prejudice of the other party.").

¶23. Swearing out a criminal affidavit does not constitute waiver of the right to arbitrate. Although no Mississippi court has addressed this issue, the vast majority of courts which have considered this issue have held that filing a criminal affidavit, in and of itself, does not waive the right to arbitrate. *See e.g.*, *Consorcio Rive, S.A. de C.V. v. Briggs of Cancun, Inc.*, 134 F. Supp. 2d 789, 795-96 (E.D. La. 2001) (finding that filing a statement of facts with the attorney general "did not amount to substantial invocation of the judicial process"); *Griffin v. Burlington Volkswagen, Inc.*, 411 N.J. Super. 515, 521 (N.J. Sup. Ct. App. Div. 2010) (rejecting the claim that a car dealership's "invocation of the criminal process to regain possession of the car constituted waiver" of the right to arbitrate). *See also Cash Biz, LP v. Hiawatha Henry*, No. 01-15-00469-CV, 2016 WL 4013794, at *8 (Tex. Ct. App. July 27, 2016), *cert. granted,* (holding "Cash Biz's filing of a criminal complaint does not rise to the extent of active engagement in litigation that Texas courts have consistently held to be specific and deliberate actions inconsistent with a right to arbitrate or that display an intent

11

to resolve a dispute through litigation"); ***InfoSpan, Inc. v. Emirates NBD Bank PJSC***, Case No. SACV 11-1062 JVS, 2012 WL 12960766, at * 4 (C.D. Cal. Dec. 7, 2012) (holding that a bank "did not implicitly waive its right to arbitrate by filing the criminal complaint for fraud"); ***Gatlin v. Criscione***, No. 1:07-cv-7212, 2008 WL 2745956, at *3 (N.D. Ill. July 11, 2008) (finding that a car dealership's use of the criminal justice system "to effect its contractual right to take possession of the vehicle" did not amount to submitting an arbitrable issue to a court); ***Prescott-Follett & Assocs., Inc.***, 2002 WL 31528463, at *5 (finding "the alleged filing of criminal charges . . . did not amount to a waiver of the defendants' right to arbitrate").

¶24. The law does not require choosing between reporting a crime and maintaining the right to arbitrate future disputes that may arise. Dollar General did not have to arbitrate whether Keyes had committed a crime. Dollar General was not limited to arbitration to seek recoupment of its lost funds. Therefore, Dollar General was not avoiding an arbitration action because it was not required to arbitrate a criminal action under the plain language of the arbitration agreement.

¶25. Because Dollar General did not waive all arbitration claims and Keyes's claim for defamation falls within the scope of the Arbitration Agreement, we affirm the trial court's finding submitting this claim only to arbitration.

## CONCLUSION

¶26. Only Keyes's claim for defamation falls within the scope of the Arbitration Agreement. Because Dollar General did not waive its right to arbitrate all claims by filing

12

a criminal complaint, the trial court's order staying the claim and submitting the defamation claim to arbitration is affirmed. The other claims brought by Keyes do not fall within the Arbitration Agreement, and those claims were not properly submitted to arbitration. The order dismissing Keyes's claims for malicious prosecution, infliction of emotional distress, false imprisonment, fraud, deceit, and misrepresentation against Dollar General and compelling arbitration of them is reversed, and these claims are remanded to the Smith County Circuit Court for proceedings consistent with this opinion.

¶27.   **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. WALLER, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., KING AND COLEMAN, JJ.**

**WALLER, CHIEF JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶28.   I concur with the majority's conclusion that Keyes's claims against Dollar General for malicious prosecution, infliction of emotional distress, false imprisonment, fraud, deceit, and misrepresentation are not subject to arbitration, as those claims fall outside the scope of the arbitration clause in Keyes's employment contract. However, I disagree with the majority that Keyes's defamation claim must be submitted to arbitration. Accordingly, I concur in part and dissent in part.

¶29.   The majority finds that Keyes's defamation claim must be arbitrated because her employment contract includes "defamation" as a "Covered Claim" subject to arbitration. However, the inclusion of "Covered Claims" in a contract, while relevant to the scope of the parties' agreement, is not dispositive of whether a specific claim is subject to arbitration.

13

Regardless of the legal causes of action asserted by the plaintiff, we still must look to the factual allegations in the complaint to determine whether a claim falls within the scope of the arbitration agreement. *Scruggs v. Wyatt*, 60 So. 3d 758, 766 (Miss. 2011). Under the arbitration clause at issue here, a plaintiff's claims must arise out of or relate to his or her employment or termination to be subject to arbitration. Keyes's defamation claim bears no more relation to her employment or termination than her other claims, which the majority correctly finds are outside the scope of the parties' arbitration agreement. Thus, despite the inclusion of "defamation" as a Covered Claim, I would find that the parties did not intend that Keyes would be forced to arbitrate a defamation claim based on Dollar General's filing of a criminal complaint for embezzlement against her.

¶30. Because none of Keyes's claims fall within the scope of the parties' arbitration agreement, Keyes's argument that Dollar General waived its right to arbitration by filing a criminal complaint against her is moot, and I would decline to address it. We reached the same conclusion recently in *Pedigo v. Robertson*, 2017 WL 4838243, at *2 n.1 (Miss. Oct. 26, 2017) ("Because we find Pedigo's suit to be outside the scope of the arbitration agreement, we need not address whether RAC waived its right to arbitration.").

¶31. For the foregoing reasons, I would reverse the trial court's judgment as to all of Keyes's claims and remand this case to the trial court for further proceedings.

**KITCHENS, P.J., KING AND COLEMAN, JJ., JOIN THIS OPINION.**